Commonwealth *v.* Carter, Appellant.

Argued September 17, 1970.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Francis S. Wright,* Assistant Defender, with him *Jon P. Axelrod,* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*J. Bruce McKissock,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Rich-*

*ard A. Sprague,* First Assistant District Attorney, and
*Arlen Specter,* District Attorney, for Commonwealth,
appellee.

OPINION BY WATKINS, J., June 22, 1971:

This is an appeal from the Judgment of Sentence
of the Court of Common Pleas of Philadelphia County
by the appellant, Melvin Carter; and from the denial
of post-trial motions.

This Carter is well known to the criminal courts.
He is a chronic and hardened law violator. The deci-
sion rests heavily on the able opinion of the court be-
low written by President Judge G. THOMAS GATES of
Lebanon County, sitting specially.

On the morning of April 25, 1969, two armed men
entered the A. & P. Supermarket on Spring Garden
Street, Philadelphia, and robbed the store of $325.00 in
cash. During the robbery the patrons and employees
of the store were made to go into a back room of the
store while the manager remained with the robbers and
was forced to open the safe.

Upon obtaining the money they fled. The manager
pursued them, stopped a passing police car and directed
the officers in the car, Robert Borcich and William
Stephens, to stop the men who had robbed the store.
Officer Palermo joined the other policemen. They ap-
prehended Carter a short distance from the store. He
was brought back to the store and identified by Mc-
Faul, the manager and others in the store as one of the
holdup men.

He was found guilty of aggravated robbery, burg-
lary and carrying a concealed deadly weapon. Post-
trial motions were denied and he was sentenced to two
concurrent terms of five to twenty years imprisonment.

The principal contention of the appellant is that his
constitutional rights were violated in that although he
was present at counsel table; he was not present in

chambers during a conference between the District Attorney, his counsel and the trial Judge concerning a jury problem. During a trial recess, one principal juror and one alternate observed the appellant being placed in handcuffs. This was called to the attention of the trial Judge and he called counsel into chambers and interrogated the two jurors and found that they had not discussed what they observed with the other jurors. He then dismissed the juror and the alternate and substituted the remaining alternate for the juror excused.

We adopt a portion of the well-reasoned opinion of the court below dealing with the circumstances as follows:

"Defendant's first contention is that it was error for the court not to grant a mistrial after the two jurors saw him in handcuffs. He says that it is well-settled law that the mere display of a nonconvicted defendant in handcuffs before the jury is grounds for a mistrial. We disagree. Neither of the two cases cited by the defendant support his contention. Commonwealth v. Reid, 123 Pa. Superior Ct. 459 approved that which was said in 16 C.J. 819, par. 2075. 'A person undergoing trial for a criminal offense should be free from shackles, unless, in the sound discretion of the trial court, they are deemed necessary to restrain him from doing violence to others, or to prevent his escape'. No statement is made in this case, nor even suggested, that the mere display of a nonconvicted defendant in handcuffs is grounds for a mistrial.

"The other case cited by the defendant was United States ex rel. O'Halloran v. Rundle, 266 F. Supp. 173 (1967). This case held that the fingerprinting of a defendant in open court was not so inflammatory as to require a new trial.

"The right to be free of shackles during trial need not be extended to be free of shackles while being taken back and forth between the courthouse and the jail. In

retrospect we believe we were overly cautious when we excused the one principal juror and substituted an alternate juror, and said that we would grant a new trial if any of the empaneled jurors saw or heard about the handcuffing.

"The failure through an oversight to remove shackles from a prisoner for a short time after proceedings have commenced, or any technical violation of the rule prohibiting shackling, not prejudicial to him, is not ground for a new trial. 21 Am. Jur. 2d 276. It has been held that the trial court did not abuse its discretion in refusing to declare a mistrial where the record indicated that members of the jury may have seen the defendants handcuffed together in a courtroom corridor while being escorted to the courtroom. McCoy v. State, 175 So. 2d 588. A judge's decision to have the prisoner shackled need not be based on conduct of the prisoner at trial because to require a dangerous act at trial before shackling the prisoner would seriously impair the court's security. Loux v. United States, 389 F. 2d 911.

"It is rare indeed when a jury in a criminal case other than a capital one is sequestered. Not infrequently jurors stand around the corridors of the courthouse or, when the weather is not inclement, on the outside of the courthouse. If we would accept the defendant's contention, a jury seeing the defendant in shackles being taken to the county jail or being placed in a prison van would be disqualified and a mistrial would have to be declared. It would be impossible to discover whether jurors had witnessed anything during any recess unless they were asked specifically whether they had witnessed the defendant being handcuffed or being placed in a police van. Such questioning would only serve to tell the jurors that such had taken place.

"Some acts on the part of officers might be grounds for granting a new trial such as rushing in immediately after the court declares a recess with an ostentatious

showing of the handcuffs and the shackling of the prisoner before any of the jurors had left the box. Such conduct without cause might convey to the jury an impression of viciousness or dangerous propensities on the part of the defendant. The examination of the jurors who were excused in this case proves that they were not impressed with that which occurred. The one said she didn't witness a thing until it was called to her attention. The other had to be asked specifically whether she saw the defendant in handcuffs.

"The Tenth Circuit Court of Appeals in Way v. United States, 285 F. 2d 253 had this to say. 'Error is predicted upon the action of the court in denying a motion to dismiss the jury panel for the reason that appellant was brought into court handcuffed. It is fairly apparent from the record that without any order from the court, appellant was at one juncture brought into court handcuffed. But it is further fairly apparent from the record that the handcuffs were removed promptly after he entered the court room. It is the general rule that under ordinary circumstances freedom from handcuffs, shackles, or manacles of a defendant during the trial of a criminal case is an important component of a fair and impartial trial. In other words, such procedure should not be permitted except to prevent the escape of the accused, to prevent him from injuring others, and to maintain a quiet and peaceable trial. Odell v. Hudspeth, 10 Cir., 189 F. 2d 300, certiorari denied, 342 U.S. 873, 72 S. Ct. 116, 96 L. Ed. 656. *But there is no indication that the occurrence was prejudicial. And in the absence of an indication of prejudicial consequences, such an occurrence does not warrant the granting of a new trial.* Blaine v. United States, 78 U.S. App. D.C. 64, 136 F. 2d 284.' (Underlining added.)

"Accordingly, we believe the defendant would not have been prejudiced had we permitted the excused regular juror to remain seated.

"Defendant's second contention is that his absence from an inquiry in chambers which resulted in the discharge of the regular juror and the substitution of the alternate was a denial of the defendant's constitutional right to be present during all stages of the proceeding. We disagree with this contention. In United States v. Garafolo, 385 F. 2d 200 (1967) Chief Justice HASTINGS said, 'As a final ground for reversal the appellant argues that trial court erred in replacing a juror with an alternate juror without a hearing at which appellant was present. Rule 24 (c) of the Federal Rules of Criminal Procedure, Title 18, U.S.C.A., provides that "(a)lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." Appellant argues that Rule 43, which provides that "the defendant shall be present . . . at every stage of the trial including the impaneling of the jury . . ." requires that the determination of a juror's disqualification or inability to perform be made in an open hearing. The same issue was recently presented to the Second Circuit in United States v. Houlihan, 2 Cir., 332 F. 2d 8 (1964) ; cert. den., 379 U.S. 828, 85 S. Ct. 56, 13 L. Ed. 2d 37 (1964). The court found no error : "Although every effort should be made to afford such an opportunity, we do not think that failure to do so in a case such as this presents grounds for reversal. Situations may sometime arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel—e.g., if a juror is taken so ill that he cannot come to court or has a family emergency requiring him to leave during the night or over a weekend. We hold that no error was committed by the trial judge in excusing the juror prior to the arrival of defendants and their counsel." '

"The defendant had accepted the twelve jurors and the two alternates. The defendant was not prejudiced by the excusing of one of the principal jurors. A defendant does not have the right to select a particular juror but only to reject one who is not qualified or who is prejudiced or who he feels he would prefer not to have on the jury and then for the latter, only to the extent that he is allowed peremptory challenges. People v. Howard, 211 Cal. 322, 295 P. 333, 71 A.L.R. 1385.

"The examination of the two jurors, the order excusing them from further service, and the substitution of the principal juror by the alternate juror all took place in chambers outside of the presence of the defendant. Counsel for the defendant did not ask that the defendant be present. Defendant was seated in the courtroom and readily available. Chambers consisted of a partitioned portion of the courtroom, and the defendant was seated only a few feet from the partition.

"The record does not disclose that following the conference at which the trial judge decided to discharge the two jurors the court convened and in the presence of the jury and the defendant announced that he had discharged two jurors but of course, gave no reason for such discharge. We emphasize that the alternate juror who substituted had been accepted by defendant as a qualifed alternate. No claim is now made that the substituted juror was unable to render a fair verdict. We believe the defendant's presence is required only where there is a reasonable substantial relation to the fullness of the opportunity to defend the charge. Snyder v. Massachusetts, 291 U.S. 97, People v. Isby, 30 C. 2d 879, 186 P. 2d 405, People v. Abbott, 47 C. 2d 362, 303 P. 2d 730.

"The absence of the defendant at the conference was no more prejudicial to him than his absence at the side bar conferences and counsel does not suggest that such absences are grounds for a new trial."

After the verdict, the court inquired of the jury whether the two jurors excused had discussed with them the incident of the shackles. The answer was no.

The appellant relies heavily on a Michigan case, *People v. Medcoff*, 344 Michigan 108, 73 N.W. 2d 537 (1955). The offenses charged in this case involved gambling and the trial judge outside the hearing of the jury directed the arrest of the first Commonwealth witnesses for perjury. Later it was charged by the defendant that the jury was aware of the perjury arrests and a mistrial was requested. The court then examined the jurors in a closed session with only the court reporter present. Counsel for the defendant was excluded. Then although he found misconduct, the court proceeded with the trial before the same jury and denied the motion for a mistrial. The Supreme Court of Michigan, on appeal, reversed and ruled that the exclusion of counsel for the defendant in an inquiry of misconduct of the jury was a violation of the defendant's constitutional right to confrontation.

In the *Michigan* case, there was evidence of misconduct in the jury that is not true here. In the *Michigan* case, the court took no action, while in the instant case the court, being extremely cautious, removed the jurors involved, although he was convinced there was no prejudice. More important, in the instant case, counsel was present and defendant available at counsel table so that it actually amounted to a side-bar conference.

The argument concerning identification is clearly one of credibility and the weight to be given to such evidence is a jury question. It was well handled by the court below in his charge.

We again draw on Judge GATES' opinion in regard to the contention of the defendant that he is entitled to a new trial because of the failure of the Commonwealth to produce a police witness, as follows:

"The fourth reason in support of defendant's motion for a new trial is that the Commonwealth had a duty to (1) produce at trial an Officer Stephens who, at a preliminary hearing, testified to having participated in the pursuit of the defendant and in his subsequent arrest or (2) at least keep the defendant's counsel informed as to his whereabouts. He says the failure of the Commonwealth to do either was prejudicial. He contends there was an abuse of discretion on the trial judge's part in refusing to grant a continuance to permit his counsel to locate the witness when he learned that his attempts to subpoena the Officer during trial through normal police channels had shown that he had been dismissed.

"The Commonwealth's evidence showed that on April 25, 1969, at about 9:45 a.m. Officer Palermo was patroling the area in a red car. At the intersection of 36th and Hamilton Streets, he observed Officer Stephens running after a male negro wearing a gold sweater with a black and white bandanna around his neck. Officer Palermo heard Mr. McFaul, the manager of the A. & P. Supermarket that was held up, call out, 'That man just held me up. Catch him.' Officer Palermo then got out of his car and pursued the defendant south on 36th Street to Hamilton Street and east on Hamilton Street. The defendant, Carter, was ten or fifteen feet ahead of Officer Palermo, Carter forced his way through the door of a house and went through a cellar. Palermo followed defendant to the roof and arrested him. After he had the defendant in custody on the roof Mr. McFaul hollered, 'he is one of them'. Palermo then took the defendant off the roof and placed him in the patrol car where McFaul again identified Carter and told Palermo that the other holdup man had run east on Spring Garden Street. On cross-examination, Officer Palermo testified that he never lost sight of Carter from the time he saw Stephens running and McFaul pointing to the defendants as one of the robbers.

"The defendant cites Commonwealth v. Carter, 427 Pa. 53, 233 A. 2d 284 (1967), a case in which he was the appellant, in support of his fourth contention. In this case Justice ROBERTS said it is a well-recognized principal of law that in criminal trials the prosecution is not absolutely bound to call to the stand all available and material eyewitness, but that it is just as clear that when the Commonwealth does not call to the stand such an eyewitness, it must apprise the defense as to the witness's name and whereabouts at trial unless the defense is able or should have been able to procure the witness unaided.

"Nowhere does it appear that Stephens was an eyewitness to the commission of the holdup any more than Palermo, the Officer who testified. The victim, McFaul, was an eyewitness. He pointed out the defendant to the officers. Both Officers pursued the defendant and participated in the capture. Stephens' testimony would have been cumulative. The court permitted the reading into the testimony that which Officer Stephens had testified to at the preliminary hearing and where he was subject to cross-examination.

"Carter's argument in this matter is interesting but unconvincing. He contends that 'At the very least the Commonwealth had a duty to keep a track of their main witness and inform defense counsel of their whereabouts'. No authority for such statement is cited, and no logical reason given in support of this proposition. We do not believe that the Commonwealth owes such a duty. The duty which the Commonwealth owes is as expressed by Justice ROBERTS in Carter, supra. He said in referring to the concept of fairness, '. . . This awareness makes us reluctant to permit the establishment of facts crucial to criminal guilt solely by police testimony based on a single observation *where testimony from a more disinterested source is available.* Thus, while disclosure might not be necessary in a case

where police evidence as to crucial facts was corroborated by neutral witnesses, we are unwilling to do so in a case like the instant one.'

"The testimony of Officer Stephens could not have been crucial for the purpose of establishing guilt. As we have already said such testimony would have been cumulative to other Commonwealth testimony. In Carter reference was made to United States v. Simonetti, 326 F. 2d 614 (2d Cir. 1964) (per curiam) in which latter case the court said that when an informant's testimony is merely cumulative, the identity of the informer need not be revealed.

"Not only was Officer Stephens not an eyewitness, he was not even a material witness under the evidence which was produced. Additionally, when the court permitted the reading of Stephens' testimony at the preliminary hearing to the jury we believe that the defendant got more than he was entitled to have."

Shortly after the robbery, Officer Palermo interviewed August Prince who was a customer in the store. Contrary to the appellant's contention, no formal statement was taken from the witness. All he said was in answer to questions concerning the description of the defendant which was included on the police report form which Palermo filed and which counsel for appellant was allowed to see. As the court below said: "It cannot be error on the trial judge's part to refuse to give an order to produce a nonexisting statement."

Judgment affirmed.