662 A.2d 9

**COMMONWEALTH of Pennsylvania**

v.

**Robert McNAMARA, Appellant.**

Superior Court of Pennsylvania.

Submitted March 8, 1995.

Filed July 7, 1995.

450

Samuel C. Stretton, West Chester, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before DEL SOLE, FORD ELLIOTT and CERCONE, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on July 13, 1994. We affirm.

The following synopsis of the relevant factual and procedural history of this case is adopted from the Opinion of the Honorable Jane Cutler Greenspan:

In the evening of August 2, 1993, at 6:00 p.m, [sic] the victim, Anthony Mangigian, parked his maroon 1987 Chevrolet Camaro at Rhawn Street and Roosevelt Boulevard. Prior to leaving, the victim locked the car, activated its burglar alarm, and did not give anyone permission to enter or move the car. Several valuable items, including a blue tool box, were left in the car. In the morning of August 3, 1993, at around 2:00 or 2:30 a.m., the victim discovered that his car was missing. At 5:00 a.m. the same morning, a Philadelphia police officer saw defendant exiting the driver's seat of a reportedly stolen maroon Chevrolet Camaro. The officer followed defendant as he walked from the maroon Camaro to a gray Chevrolet Camaro parked nearby. The

officer observed defendant place a blue tool box—which defendant had taken from the maroon Camaro—through the driver's side of the gray Camaro.

In addition to defendant, the officer also noticed five males surrounding the maroon Camaro. Initially, the officer held these five individuals for investigation, later releasing them since they were not seen in, nor had they possessed anything from, the maroon Camaro. Since the officer was occupied with these five suspects, he did not immediately stop the defendant. However, the officer recognized defendant from the neighborhood and also knew where he resided. The police later contacted the victim ... [who] identified the car as his....

Officers at the scene directed the victim to the gray Camaro located up the street from the victim's stolen car. The victim subsequently identified and retrieved his blue tool box from the back seat of the gray Camaro. Later in the morning, the officer who had previously observed defendant place the blue tool box into the gray Camaro, visited defendant at his 1940 Ruan Street, Philadelphia residence. Upon seeing the officer, defendant closed the door on him. Thirty minutes after the officer's visit, defendant surrendered at the police station.

Trial court opinion, 9/23/94 at 1, 2 (citations to notes of testimony and footnotes omitted). The trial court summarized the procedural history as follows:

On August 8, 1993, defendant, Robert McNamara, was arrested and charged with theft by receiving stolen property.[1] ... [A] jury trial followed on May 17, 1994, and defendant was subsequently found guilty of theft by receiving stolen property.... Post-sentence motions were argued and subsequently denied on July 13, 1994, and defendant was sentenced to serve not less than three (3) years,

1. 18 Pa.C.S.A. § 3925:

(a) **Offense defined.**—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

452

nor more than seven (7) years, consecutive to any other time, for theft by receiving stolen property ...

*Id.* at 1.

On appeal, appellant presents four issues. Although appellant has couched the first issue in terms of prosecutorial error, we believe that a correct statement of the issue concerns alleged trial court error in not declaring a mistrial based upon improper opening and closing remarks by the prosecutor. The second issue raises the constitutionality of the preliminary stages of the jury selection process in Philadelphia County, a process which appellant alleges is also violative of the Pennsylvania Rules of Criminal Procedure. Appellant's third issue alleges trial court error in not striking for cause jurors who initially indicated an inclination to believe police officers over lay witnesses, or who were victims, and/or relatives or friends of victims, of similar crimes. Finally, appellant alleges trial court error in failing to instruct the jury that mere knowledge of criminal activity is not a basis for a criminal conviction, even when coupled with presence at the scene of the crime. (Appellant's brief at 4.) Because the trial court opinion both accurately and adequately addresses the first, third, and fourth issues, we shall adopt it with respect to these issues, with the following comments added for emphasis.

We note, in relation to appellant's third issue, namely, that the trial court erred in not striking certain jurors for cause, our supreme court has stated:

It is true, of course, that an accused has the right to challenge a prospective juror for lack of impartiality. We do not expect jurors to be free from all prejudices, however; rather, the law requires them to be able to put aside their prejudices and determine guilt or innocence on the facts presented.... The purpose of the voir dire examination is not to provide a better basis upon which a defendant can exercise his peremptory challenges, but to determine whether any venireman has formed a fixed opinion as to the accused's guilt or innocence.... *The burden of proving that a venireman should be excused for cause is on the challenger who must demonstrate that he or she possesses a*

*fixed, unalterable opinion that would prevent him or her from rendering a verdict based solely on the evidence and the law.*

*Commonwealth v. Smith,* 518 Pa. 15, 36, 540 A.2d 246, 256 (1988) (citations omitted) (emphasis added). We note that the trial court required appellant to meet this burden, and that appellant failed. (Trial court opinion, 9/23/94 at 8.) That appellant failed to meet his burden is evident from our review of the record below.

■ Appellant admits that the trial court questioned all of the prospective jurors who indicated on their questionnaires that they had been or knew victims of crimes, along with those who indicated that they would tend to believe police officers over lay witnesses; nevertheless, appellant categorizes this questioning as perfunctory. We agree with appellant that, if his right to question prospective jurors was limited by the trial court, which engaged in only a cursory review of the jurors' answers, he would have a legitimate basis for alleging error on the part of the trial court. Our careful review of the record, however, convinces us that neither of these allegations of error is true. First, when either of the attorneys requested an opportunity to ask a specific question of one of the jurors, that request was granted. For example, when Assistant District Attorney Sweeney queried, "May I ask a question on one of these previous answers?" the trial court responded, "Certainly." (Notes of testimony, 5/16/94 at 65.) Counsel for appellant, however, chose not to ask any specific questions of the jurors; rather, he merely challenged them for cause based upon their answers on the questionnaire, even after they indicated they could be fair in response to the trial court's questioning. (*See* notes of testimony, 5/16/94 at 82–86.) At no time was appellant's counsel denied the opportunity to ask a specific question of a particular prospective juror. As the trial judge stated when appellant's counsel challenged six (6) jurors for cause after sitting quietly while they were questioned:

I will tell you right now, go to the person you really have a claim about because these are not claims; where they indicated something on their sheet and I have questioned

them about that and they indicated they could be fair, that is not a basis to strike them for cause because they put it down on their sheet. Go to something that is an indication in their answers as to why they could not be fair.

Notes of testimony, 5/16/94 at 86–87.

In addition, in response to appellant's argument that the trial court's questions were perfunctory, we note that the judge's questions and the venirepersons' responses to them occupy sixty-four (64) pages of testimony. Furthermore, of the forty (40) prospective jurors questioned during *voir dire*, nine (9) were excused by agreement, and one (1) of the six (6) challenged by appellant was excused for cause. It does not seem appropriate, therefore, to categorize the trial judge's *voir dire* as "perfunctory." We would therefore affirm on this basis, as well as on the grounds stated by the trial court in her opinion.

■ The only remaining issue for our review, then, is the legality, in both a constitutional and procedural sense, of the preliminary stages of the jury selection process in Philadelphia County. The gravamen of appellant's complaint is that he had a constitutional and procedural due process right to be present with counsel at all phases of the jury selection process, and that all of the jury impanelling proceedings should have taken place in open court before the judge. (Appellant's brief at 19, 20.) In support of his argument, appellant relies upon "the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and related provisions under the Pennsylvania Constitution." (*Id.* at 19.) Appellant also relies upon Pa.R.Crim.P. Rule 1106, 42 Pa.C.S.A., which provides in pertinent part:

(a) Voir dire of prospective trial jurors and prospective alternate jurors shall be conducted, and the jurors shall be selected, in the presence of a judge.

. . . .

(c) Voir dire, including the judge's ruling on all proposed questions, shall be recorded in full unless the recording is waived. . . .

(d) The judge may require the parties to submit in writing a list of proposed questions to be asked of the jurors regarding their qualifications. The judge may permit the defense and the prosecution to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the Court shall permit the defense and the prosecution to supplement the examination by such further inquiry as it deems proper.

*Id.* In addition, Pa.R.Crim.P. Rule 1117, 42 Pa.C.S.A. provides:

(a) The defendant shall be present at the arraignment, at every stage of the trial including the impanelling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. . . .

. . . .

*Id.* Appellant claims that Philadelphia's practice of guiding prospective jurors through a questionnaire concerning their "bias, prejudice, ability to be fair, etc." by video-tape, outside everyone's presence, was violative of both the aforementioned Rules and of appellant's constitutional due process rights. (Appellant's brief at 12.) While appellant has failed to provide this court with an account of the procedure in Philadelphia County so that we may evaluate its adherence to these Rules and to the constitutional interests they are designed to protect, nevertheless, the Commonwealth has provided its account. We will therefore set forth the Commonwealth's account of Philadelphia County's preliminary procedure:

Prior to the commencement of the court day, between two hundred and three hundred venirepersons, who have received summons to appear for jury service, assemble in the Jury Assembly room to check in and to go through the administrative steps preparatory to their assignment to individual courtrooms for voir dire. These administrative procedures are performed by court administrative personnel. No judges, prosecutors, defense counsel or other lawyers, criminal defendants, or other parties are present in the Jury Assembly room.

One of the administrative procedures carried out in the Jury Assembly room is the assigning of numbers to the venirepersons, and the random selection of those numbers by computer, to ensure that each panel of twenty venirepersons ultimately sent out to each of the various courtrooms for voir dire is a random cross-section of the pool of venirepersons summoned that day. As the venirepersons arrive in the Jury Assembly room and hand in their summons, the number on their summons is assigned them as their juror number, entered into a computer and randomized. When a trial courtroom telephones requesting a venire panel be sent there, the computer then randomly assigns twenty venirepersons to the venire panel, and randomly gives each venireperson in the panel a panel number from 1 to 20 which determines their [sic] order on the panel. The computer prints out a sheet giving the randomized list of venirepersons, juror numbers and panel numbers, which accompanies the venirepersons to the trial courtroom.

. . . .

. . . In the Jury Assembly room another one of the administrative procedures carried out is the distribution to the massed venirepersons of a questionnaire. This elicits background information from the venirepersons—name, marital status, occupation, schooling, number and sex of children, and area of residence. It also gives venirepersons the opportunity to indicate, by 'yes' or 'no' answer, if there is a reason they believe might prohibit them from serving as jurors: whether they have any physical or psychological disabilities; whether they have previously been a juror; whether they have any religious, moral, or ethical beliefs that would prevent them from sitting in a criminal case; whether they have any problem with following the instructions of the court in a criminal case; whether they, or persons close to them, has [sic] ever been a victim, defendant or witness in a criminal case; whether they, or persons close to them, have ever been employed law enforcement officers or other law-related jobs; whether they have any problem that might interfere with jury deliberations; and,

whether they believe there is any other reason they could not be fair jurors. To assist the venirepersons in completing this questionnaire, a videotape is played which walks the venirepersons through it, reading the questions aloud. When the questionnaires are completed, they are collected by the court administrative personnel. When a panel of venirepersons is sent to a trial courtroom to under go [sic] voir dire, their questionnaires are forwarded to the trial courtroom, with copies for the judge, plaintiff/prosecutor, and defendant, to provide them with this background information for use in their voir dire questioning.

Commonwealth brief at 9–10, 13–14.[2]

■ Both parties and the trial court below agree that "jury selection is a 'critical stage' of the prosecution against an accused which calls for the assistance of counsel." *Commonwealth v. Shirey*, 333 Pa.Super. 85, 106, 481 A.2d 1314, 1325 (1984), *overruled on other grounds, Commonwealth v. Anderson*, 379 Pa.Super. 589, 550 A.2d 807 (1988). The parties are also in agreement that *voir dire* is "the examination and interrogation of prospective jurors." Pa.R.Crim.P. Rule 3(s), 42 Pa.C.S.A. This court has previously held, however, that "[i]t is widely recognized that a defendant's presence during all stages of the trial does not extend to purely procedural matters preparatory to the trial." *Commonwealth v. McLaurin*, 292 Pa.Super. 392, 397, 437 A.2d 440, 443 (1981). The crux of appellant's issue, therefore, is whether the procedures outlined above, adopted by the Philadelphia courts to expedite the processing of venirepersons so that they can more quickly be sent to individual courtrooms for *voir dire*, are administrative proceedings as the Commonwealth alleges,

2. While we are grateful to the Commonwealth for this detailed account of administrative procedure in Philadelphia County, we must note that the Commonwealth's reliance in its brief on Pa.R.Crim.P. Rule 1107, 42 Pa.C.S.A., which is similar in its goals to the procedure delineated above, is misplaced. Rule 1107 was amended by order of the supreme court on September 15, 1993, to take effect in January 1994 as the Commonwealth states; however, the September 15, 1993 order was suspended December 17, 1993, until further order of the court. To date, no such order has been entered. As a result, Rule 1107 is not currently in effect.

or are a part of *voir dire* itself. A determination of this issue requires us to analyze the nature of these proceedings to determine whether any of appellant's due process rights are in jeopardy if the proceedings are conducted outside the scrutiny of the court and defense counsel.

This court, in *Commonwealth v. Carter*, 219 Pa.Super. 280, 281 A.2d 75 (1971), was confronted with a similar allegation of an infringement of appellant's due process rights. In *Carter*, appellant was not included in an in-chambers determination that one juror and one alternate should be dismissed because they had seen appellant in shackles. Although appellant's counsel, the prosecutor and the judge made the determination, appellant claimed a violation of his constitutional right to be present at all phases of his trial. *Id.* at 285–87, 281 A.2d at 79. In its analysis of Carter's due process rights, this court adopted the standard enunciated by the Supreme Court in *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *rev'd on other grounds, Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); namely, that "a defendant's presence is required only where there is a reasonable substantial relation to the fullness of the opportunity to defend the charge." *Carter* at 287, 281 A.2d at 80, *citing Snyder, supra*. Finding that Carter had accepted the alternate juror who was substituted as a qualified alternate, this court found no violation of Carter's due process rights. *Id.*

Applying the *Carter/Snyder* test to the instant case, we must next determine at what point in the jury selection process there exists a reasonable, substantial relation to the fullness of the opportunity to defend. To make this determination, we have reviewed the case law of other jurisdictions, and the procedure promulgated for use in the federal courts. In *U.S. v. Williams*, 927 F.2d 95 (2nd Cir.1991), *cert. denied, Davis v. U.S.*, 502 U.S. 911, 112 S.Ct. 307, 116 L.Ed.2d 250 (1991), the court of appeals addressed the constitutionality of a procedure adopted by the district court for the southern district of New York. Under the court's procedure, "any person summoned for jury service may be (1) excused by a district judge or the Clerk of Court upon a showing of undue

hardship or extreme inconvenience, for such period as the judge or the Clerk of Court deems necessary...." *Id.* at 97 (citation omitted). The court of appeals compared this language to the language of the Jury Selection and Service Act of 1968, Pub.L. No. 90–274, 82 Stat. 53 (codified as amended at 28 U.S.C. §§ 1861–78 (1988)), which provides that "any person summoned for jury service may be (1) excused by the court, or by the clerk *under supervision of the court* if the court's jury selection plan so authorizes, upon a showing of undue hardship or extreme inconvenience, for such period as the court deems necessary...." *Williams* at 97, *quoting* 28 U.S.C. § 1866(c) (emphasis added). In *Williams,* two "talesmen" were temporarily excused by the clerk of courts from a panel of prospective jurors sent to appellants' court room. The clerk was acting pursuant to specific instructions from the trial judge; therefore, the court of appeals did not have to reach the issue of whether the southern district plan was consistent with the federal statute. *Williams, supra* at 97. The appellate court did, however, note that the excusal of the two talesmen was not constitutionally forbidden. *Id.* at 95. In so determining, the second circuit distinguished *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), cited by appellants in *Williams* and by appellant in the instant case. *Gomez* held that the *voir dire* of a jury had to be conducted by a judge rather than a magistrate because "voir dire is a critical stage of the trial during which the defendant has a constitutional right to be present." *Williams, supra,* at 96, *citing Gomez, supra,* at 873, 109 S.Ct. at 2246. The *Williams* court then stated:

> Voir dire is not an issue in the instant case. Voir dire is conducted by the judge in the courtroom, not by the clerk in the central jury room.

*Williams, supra* at 96. The *Williams* court continued:

> Moreover, even if the excuse of the two jurors was error, it was harmless error. Although appellants argue that under *Gomez* harmless error analysis does not apply, the court in *Gomez* relied on the distinction between *voir dire, which is the jurors' 'first introduction to the substantive*

*factual and legal issues in a case,' and a mere 'administrative impanelment process.'* ... [I]n this case, the trial judge conducted the entire voir dire. Excusing two potential jurors without exposing any jurors to the substance of the case was part of the 'administrative impanelment process,' and any error in this procedure [because it did not comply with § 1866(c), *supra* ], was harmless.

*Williams, supra* at 97, *quoting Gomez, supra* (citations omitted) (emphasis added). The critical moment, therefore, at which an accused's constitutional rights attach during *voir dire* is that moment at which the jurors are introduced to the substantive factual and legal issues in the case.

■ Applying this test to the Philadelphia County procedure delineated by the Commonwealth in its brief and quoted extensively *supra*, we note that at no point in that procedure are the jurors introduced to the substantive issues of an accused's case. Rather, all questions are designed to elicit background information that will help the judge, counsel, and the accused evaluate the prospective jurors' availability, capability, impartiality, and similarity to defendant. Having found that the Philadelphia County procedure is not *voir dire*, we also find that the jury selection process is not fundamentally flawed; therefore, appellant is entitled to no relief on this basis.[3]

■ Likewise, we find no merit to appellant's claim that the random selection of venirepersons, and their random ordering by computer prior to assignment to a court room, interferes with his constitutionally protected right to enter peremptory

---

**3.** We note, however, that, since rescinded Rule 1107 mandated disclosure in a questionnaire of a juror's "relationship to any court, any defendant, any witness, any law enforcement officer, or any attorney," Rescinded Pa.R.Crim.P. 1107(b), 42 Pa.C.S.A, such a mandate would appear to impermissibly cross the line into matters properly left for *voir dire* if it would require jurors to be introduced to the particulars of the accused's case. Since, in the instant case, it is clear from the transcript that the prospective jurors were first apprised of appellant's identity, as well as the identity of the witnesses, the court officials and the relevant law enforcement personnel, in the courtroom by the trial court judge, we find no such encroachment. (Notes of testimony, May 16, 1994 at 30–33.)

challenges in the order most advantageous to his case. (Appellant's brief at 22.) As we have already noted, "the purpose of voir dire is not to provide a better basis upon which a defendant can exercise his peremptory challenges," *Commonwealth v. Smith, supra* at 36, 540 A.2d at 256, but to ensure that none of the jurors has "formed a fixed opinion as to the accused's guilt or innocence." *Id.* The randomness made possible by computer selection is designed to protect appellant's constitutionally protected right to be tried by "a jury of his peers" rather than by a jury selected for some impermissible reason. If the random ordering that results interferes with optimal use of appellant's peremptory challenges, that is an unfortunate, but unavoidable, consequence. *Compare* Jury Selection and Service Act of 1968, *supra,* 28 U.S.C. § 1863(b)(3), (4) ("procedures for jury selection "shall be designed to ensure the random selection of a fair cross section of the persons residing in the community . . . they shall ensure that the names [of people in the region] are placed in a master jury wheel" . . . (or a device similar in purpose and function).") *and Id.* at § 1864(a) ("From time to time as directed by the district court, the clerk or a district judge shall publicly draw at random from the master jury wheel the names of as many persons as may be required for jury service. The clerk or jury commission may, upon order of the court, prepare an alphabetical list of the names drawn. . . . The clerk or jury commission shall mail to every person whose name is drawn from the master wheel a juror qualification form accompanied by instructions to fill out and return . . .").

For the foregoing reasons, judgment of sentence is affirmed, and jurisdiction is relinquished.