J-S01040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
AXEL RIVERA-RODRIGUEZ :
:
Appellant : No. 776 MDA 2021

Appeal from the Judgment of Sentence Entered June 3, 2021
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000242-2020

BEFORE: BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: JUNE 7, 2022**

Axel Rivera-Rodriguez appeals from the judgment of sentence imposed following a jury trial in which he was found guilty of possession with intent to deliver a controlled substance, unlawful possession of drug paraphernalia, and tampering with or fabricating physical evidence.[1] For these offenses, Rivera-Rodriguez received an aggregate sentence of four to eight years of incarceration. On appeal, Rivera-Rodriguez raises four issues, with two of those claims appearing to fall under the auspice of ineffective assistance of counsel. Given, *inter alia*, that this is a direct appeal from his judgment of sentence, we find no merit to those two assertions. In addition, as to his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(32), and 18 Pa.C.S.A. § 4910(1), respectively

remaining averments, we hold that Rivera-Rodriguez's sufficiency and weight of the evidence claims do not warrant relief. Therefore, we affirm.

As gleaned from the record, on one evening in December 2019, a police officer and his partner, while on patrol in Harrisburg, Pennsylvania, observed a pick-up truck intentionally cut off and block a car from proceeding any further in the lane of travel that the car had been on. Thereafter, the car went into reverse and sped away from the scene. The police officer, at this point, activated his emergency lights and intended to execute a traffic stop on the truck.

The officer followed the truck, by vehicle, for some length of time until, on one block, the truck reached a dead-end at a fenced barricade. At that point, the officer saw Rivera-Rodriguez exit the vehicle, walk in front of the truck, and throw two bags over the adjacent barricade. Eventually, the officer handcuffed Rivera-Rodriguez, but in that process, Rivera-Rodriguez held out three one-hundred-dollar bills that were later determined to be fake.[2]

A third officer, who had been called for backup, retrieved the bags that Rivera-Rodriguez had thrown over the fence. Those bags each contained ten bundles of fentanyl,[3] which amounted to two hundred individual bags of the substance. Moreover, that officer located two additional bundles of fentanyl in that vicinity.

---

[2] Rivera-Rodriguez stated, at the time of arrest, that the bills were not real.

[3] At trial, the parties stipulated that the bundles, in fact, contained fentanyl.

Rivera-Rodriguez's vehicle did not contain anything illicit, nor did he have any contraband or paraphernalia on his person concurrent with his arrest.

At trial, both sides attempted to frame Rivera-Rodriguez's drug use, with Rivera-Rodriguez's witness highlighting him testing positive for fentanyl four times leading up to his arrest in this case. Conversely, the Commonwealth presented testimony demonstrating that Rivera-Rodriguez tested positive for marijuana six times and opiates once over a six-month period leading to his arrest.

Expert testimony was adduced for the purposes of establishing that the fentanyl recovered had been possessed with an intent to deliver. In summary, the presence of counterfeit currency, the unquestionably large quantity of drugs, and Rivera-Rodriguez's lack of employment leading up to his arrest all tended to corroborate that the fentanyl was for distribution rather than personal consumption.

In his defense, Rivera-Rodriguez stated that he had the intention of purchasing drugs. Rivera-Rodriguez claimed that brought the fake dollar bills to demonstrate to the seller that he had the means to acquire those drugs. During the interaction, he tried some of the product.

Rivera-Rodriguez also specified that he attempted to block the car to get the police officer's attention. He maneuvered his vehicle in this manner because he believed that it would lead to an arrest for both him and the seller, the ostensible driver of the car. Additionally, Rivera-Rodriguez conveyed that

he feared for his life. However, more broadly, Rivera-Rodriguez denied selling drugs.

Immediately prior to the start of jury deliberations, three jurors happened to see Rivera-Rodriguez in handcuffs and ankle braces. The three jurors were kept separated from the other jurors and did not have any subsequent interaction with them. Instead, after Rivera-Rodriguez's counsel moved to strike the jurors in question, the three jurors were replaced with the three alternate jurors. When asked whether Rivera-Rodriguez wanted any explanation about this situation given to the remaining jury composition, his counsel stated that the jury should just go to deliberations. No motion was filed nor was any kind of relief sought in conjunction with this event.

Ultimately, Rivera-Rodriguez was found guilty of the aforementioned criminal offenses. Several months later, he was sentenced to four to eight months of incarceration. Rivera-Rodriguez filed a timely post-sentence motion, which was denied. After that motion's denial, he timely appealed to this Court. As such, this matter is ripe for review.

On appeal, Rivera-Rodriguez presents four issues:

1. Did the trial court err in not granting a mistrial after members of the jury observed him shackled?

2. Did the trial court err in allowing the testimony of a probation officer when he testified that he was his supervision probation officer?

3. Did the court err in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence that he intended to deliver the contraband?

4. Did the court err in accepting the jury's verdict which was contrary to the evidence presented at trial?

*See* Appellant's Brief, at 4.

In his first claim, Rivera-Rodriguez argues that "it was prejudicial for the jurors to view him handcuffed and shackled prior to jury deliberations[.]" *Id*., at 12. To that point, "the trial court's dismissal of said jurors without first questioning them as to whether they spoke to any other jurors about what they saw was reversible error." *Id*.

While the jury members were being transported to deliberations in a piecemeal fashion under Covid-19 protocols, three of the jurors observed Rivera-Rodriguez in handcuffs and ankle braces. *See* N.T., 3/9/21, at 163. After this situation was brought to the court's attention, Rivera-Rodriguez's attorney made a motion to strike the three jurors, which resulted in them being replaced by three alternates. *See id*., at 163-64. Those observing jurors had, like the rest of the jury, been "separated out in groups and [had] not begun deliberations" prior to them being excused. *Id*., at 164. When asked if he wanted the court to say or do anything more than facilitate the substitution of those jurors, Rivera-Rodriguez's attorney stated: "[l]et them go to deliberations, Your Honor." *Id*.

To support his position, Rivera-Rodriguez relies on two cases from this Court wherein, in at least one of the cases, we granted a new trial after the jurors saw a defendant in handcuffs in the courtroom. *See e.g*., ***Commonwealth v. Cruz***, 311 A.2d 691, 691-92 (Pa. Super. 1973)

(describing the prejudice that could have been easily created in the jurors' minds because of the restraints seen on the defendant). However, **Cruz** also references **Commonwealth v. Carter**, 281 A.2d 75 (Pa. Super. 1971), which, largely congruent with the facts of the present case, involved this Court upholding "the action of the trial judge in dismissing two jurors who had witnessed the appellant being placed in handcuffs, during a trial recess. The trial judge determined that the dismissed jurors had not discussed the observed event with the other jurors." **Cruz**, 311 A.2d at 692 (discussing **Carter**).

Despite the Commonwealth's and trial court's insistence that Rivera-Rodriguez failed to raise this issue in a post-sentence motion, **see** Trial Court Opinion, 7/19/21, at 11; Appellee's Brief, at 4, the record reflects that he motioned the court on this basis. **See** Rivera-Rodriguez's Post-Sentence Motion, dated 6/10/21, at 3 (unpaginated) (asserting, *inter alia*, that him being observed by jurors "resulted in prejudice against him sufficient enough to impact their ability to fairly decide the case on only the evidence presented at trial[]"). However, more importantly, the record also clearly shows that Rivera-Rodriguez failed to raise a timely objection to this issue at trial. **See Commonwealth v. Rodriguez**, 174 A.3d 1130, 1145 (Pa. Super. 2017) ("The absence of a contemporaneous objection below constitutes a waiver of the claim on appeal.") (citation omitted); **see also Commonwealth v. Montalvo**, 956 A.2d 926, 936 (Pa. 2008) (highlighting "the general rule that, in order to preserve a claim on appeal, a party must lodge a timely objection

at trial[]"). Therefore, on this basis alone, we find waiver given the absence of any objection concomitant to the proceedings.

Even further than a lack of objection, after a complete on-the-record discussion, Rivera-Rodriguez's counsel assented to the court's ultimate action in replacing the jurors with alternates. Moreover, when specifically asked whether he wanted anything further to be done, his counsel conveyed that he wanted the jurors to begin deliberations. **See** Trial Court Opinion, 7/19/21, at 10 (writing that Rivera-Rodriguez's counsel made no motion for a mistrial nor requested any cautionary instruction).

To the extent Rivera-Rodriguez frames his issue as one of ineffective assistance, we emphasize the general rule that, absent an exception, such claims are not ripe for direct appeals and are deferred for review under the Post Conviction Relief Act, **see** 42 Pa.C.S.A. §§ 9541-9546. **See Commonwealth v. Holmes**, 79 A.3d 562, 563 (Pa. 2013). Rivera-Rodriguez has not argued the applicability of any recognized exception, so on that basis, too, his claim fails.

In his second point of contention, Rivera-Rodriguez avers that the court erred in permitting the testimony of Probation Officer Daniel Kinsinger. **See** Appellant's Brief, at 15. To Rivera-Rodriguez, "the intentional calling of a probation officer to testify that he was [his] probation officer" warrants a mistrial. **Id**., at 17. Implicitly, his probation officer's testimony indicated that Rivera-Rodriguez had been involved in prior criminal activity, which therefore resulted in prejudice.

As specified by Rivera-Rodriguez, Kinsinger answered "yes" when asked whether he "supervise[d] an individual named Axel Rivera-Rodriguez[.]" N.T., 3/9/21, at 120. Thereafter, Kinsinger stated that his supervision of Rivera-Rodriguez, which entailed drug testing, began in June 2019. *See id*.

Rivera-Rodriguez's claim was not asserted in his post-sentence motion, nor was there any kind of contemporaneous objection to Kinsinger's testimony. Consequently, this issue, too, is waived. *See* Appellant's Brief, at 15 n.1 (Rivera-Rodriguez recognizing that "trial counsel's failure to object to the testimony of [Kinsinger] may be an issue [germane to] collateral review" presumably as an ineffective assistance of counsel claim).[4]

In his third question presented, Rivera-Rodriguez asks this Court whether the evidence was sufficient to convict him of the offenses in which he was found guilty. The standard of review utilized in sufficiency claims is well-settled:

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each

---

[4] Even if we were to review his largely unsupported averment, we would affirm based on the trial court's conclusion that: (1) Kissinger did not testify he was Rivera-Rodriguez's "supervising *probation* officer"; (2) the word "probation" was not used by any witness, counsel, or the court at trial; and (3) it was equally as likely, if not more likely, for "supervise" or "supervision officer," which were words and phrases that had been used, to connote some sort of drug program Rivera-Rodriguez had engaged in, given his admitted drug abuse, rather than prior criminal activity. *See* Trial Court Opinion, 7/19/21, at 12.

material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Lynch**, 242 A.3d 339, 352 (Pa. Super. 2020) (citation omitted) (alterations in original). The Commonwealth is permitted to "sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted).

Rivera-Rodriguez states, and we agree, that the offense of possession with intent to deliver a controlled substance required the Commonwealth to prove beyond a reasonable doubt that he had an *actual* intent to deliver that substance. *See* Appellant's Brief, at 18-19, *quoting* **Commonwealth v. Kirkland**, 831 A.2d 607, 611 (Pa. Super. 2003). However, he notes that intent can be inferred through an examination of the facts and circumstances surrounding the case. Specifically, Rivera-Rodriguez identifies that a large quantity of drugs can provide legally sufficient intent.

However, Rivera-Rodriguez claims that intent, here, was never demonstrated beyond a reasonable doubt. Rivera-Rodriguez stresses that he was an addict, had fake dollar bills on him at arrest (which could have been used to snort fentanyl), seemingly had a high tolerance to drugs, which would

have required "more and more just to get a high," and he had been using drugs "for nearly 20 years." Appellant's Brief, at 19. As such, the evidence merely supported a finding "of personal use." *Id*., at 20.

After reviewing the record, we see no reason to deviate from the court's conclusion:

> [The expert used at trial] was very clear in his opinion that the fentanyl in this case was possessed with the intent to deliver. He supported his opinion with articulable factors[,] and the jury was certainly reasonable in crediting his opinion given his vast experience as an expert in the field of street level drug trafficking. Coupled with the evidence of drug paraphernalia, the baggies and packaging materials for the fentanyl, the evidence is sufficient to sustain [the possession with intent to deliver conviction].

Trial Court Opinion, 7/19/21, at 8 (citations to the record omitted). Evaluating the entirety of the evidence presented in a light most favorable to the Commonwealth as the verdict winner, the jury was free to conclude in the way that it did. When juxtaposed against the discrete facts surrounding Rivera-Rodriguez's arrest, the expert testimony employed by the Commonwealth provided a salient basis for the jury to conclude that Rivera-Rodriguez acted with the requite intent. Therein, it was clearly identified that, among other things, a large quantity of drugs, such as the amount at issue in this case, was consistent with an intent to deliver.

Accordingly, the Commonwealth established his intent to distribute fentanyl. While, certainly, the jury was free to reach the opposite conclusion based on what it observed, we cannot say, and Rivera-Rodriguez has not

demonstrated, that the evidence was "so weak or inconclusive" as to compel that opposite result. **See Hopkins**, 7 A.3d at 820 (stating that "[t]he trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence[]") (citation omitted). As such, he is due no relief on this issue.

In his final claim, Rivera-Rodriguez contends that the verdict rendered in this case was against the weight of the evidence. Preliminarily, we note that we are unable to ascertain whether Rivera-Rodriguez adequately preserved this issue. A thorough review of his post-sentence motion contains no weight-based claim.

Our rules of criminal procedure require a weight of the evidence challenge to be preserved in a post-sentence motion, a written motion prior to sentencing, or an oral motion that precedes sentencing. **See** Pa.R.Crim.P. 607(A)(1-3). Rivera-Rodriguez, in his brief, has not indicated where, precisely, he has preserved this issue. Although the court and Commonwealth have not objected to this apparent deficiency, this issue is waived if has not been preserved. **See id**., cmt.; **see also Commonwealth v. Cox**, 231 A.3d 1011, 1018 (Pa. Super. 2020) ("An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes a waiver of that claim.") (citation omitted).

Even evaluating his weight of the evidence assertion on its merits, we

find no salient reason to grant a new trial. Our standard of review in this domain is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citation omitted). Importantly, we emphasize that a challenge to the weight of the evidence is "[o]ne of the least assailable reasons for granting or denying a new trial." ***Thompson v. City of Philadelphia***, 493 A.2d 669, 671 (Pa. 1985).

Rivera-Rodriguez's argument is that the evidence adduced at trial supported the idea that he was merely possessing the drugs for personal use without any intent to sell. Rivera-Rodriguez bolsters this claim by stating that he tested positive for fentanyl and/or opiates in the months leading up to his arrest, he had been struggling with serious addiction for quite some time, and that, in the specific events leading to his arrest and to support this drug habit, he was looking to buy drugs and stole the drugs from the drug dealer. ***See*** Appellant's Brief, at 20-21.

The trial court's opinion, in response, is particularly instructive:

The circumstantial evidence overwhelmingly supports the conclusion that [Rivera-Rodriguez] possessed the drugs in question with the intent to deliver. The sheer quantity of drugs, the value of those drugs, and the common practice of users selling to support their habits, especially users such as [Rivera-Rodriguez] who were not legitimately employed, bely [Rivera-Rodriguez's] claim that he intended to use all two hundred seventeen … bags.

… [Rivera-Rodriguez] testified that, when he had the money to afford it, he would use as much as four .. bundles a day. That equals forty .. bags per day. However … [Rivera-Rodriguez] reported [to another his] … use of twenty … bags per day.

Trial Court Opinion, 7/19/21, at 9 (citations to the record omitted). While, again, the jury was free to reach the opposite conclusion that Rivera-Rodriguez merely possessed the fentanyl for personal consumption, it certainly does not "shock one's sense of justice," in accordance with the testimony and facts that were presented, to reach the conclusion that it ultimately decided upon. Stated differently, the quantity of fentanyl attributable to him vastly exceeded his admitted daily usage and a conclusion consistent with that, that he intended to distribute the contraband, does not require any kind of extraordinary logical leap. Therefore, Rivera-Rodriguez, having presented no compelling basis to grant a new trial on his weight-based claim, is not entitled to relief.

As each of Rivera-Rodriguez's four claims are unmeritorious, we are constrained to affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2022