COMMONWEALTH of Pennsylvania,
Appellee

v.

Lucillious WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 19, 2008.

Filed Oct. 29, 2008.

Norris E. Gelman, Philadelphia, for appellant.

George M. Green, Asst. Dist. Atty., for Com., appellee.

BEFORE: STEVENS, DONOHUE and FITZGERALD *, JJ.

OPINION BY DONOHUE, J.:

¶ 1 Lucillious Williams appeals from the order entered by the Court of Common Pleas of Delaware County, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541–9546. Upon our review of the record, we affirm.

¶ 2 After a jury trial commencing on October 8, 2002, Williams was convicted of one count of rape [18 Pa.C.S.A. § 3121], eleven counts of involuntary deviate sexual intercourse [18 Pa.C.S.A. § 3123], fourteen counts of aggravated indecent assault [18 Pa.C.S.A. § 3125], and five counts of corruption of minors [18 Pa.C.S.A. § 6301]. The trial court sentenced Williams to an aggregate term of imprisonment of 22 to 44 years and to lifetime registration and DNA registration requirements under Megan's Law [42 Pa.C.S. § 9791 et seq.].

¶ 3 The trial court set forth the relevant factual background leading to Williams' conviction and sentence as follows:

Williams was a relative and/or family friend of the victims and their mothers. N.T., 10/9/02, pp. 253–254 (T.B.). Multiple child witnesses gave damning testimony against Williams, including N.B., D.B., S.P., C.N., and T.B. All of these children were under thirteen years of age at the time of the incidents; hence their reference to Williams as "Uncle Lou." N.T., 10/9/02, pp. 25, 28–30 (N.B.); 104–06 (D.B.); 165 (S.P.); 209 (C.N.); 250–51, 254 (T.B.).

With the consent of the victims' mothers, Williams functioned as the victims'

babysitter by taking them and some of their younger brothers on weekend outings and then to his house. N.T., 10/9/02, pp. 210–11 (C.N.); 254, 257, 260–61 (T.B.). Williams sexually assaulted the victims in his car and his bedroom.

Each time the victims entered Williams' house, he instructed them to take all of their clothes off in the front hallway and gave them a t-shirt to wear while he washed their clothes, even though their clothes were not dirty and did not need to be changed or washed. N.T., 10/9/02, pp. 37–39 (N.B.); 169 (S.P.); 213–14 (C.N.); 261–262 (T.B.). Williams required the girls to take baths with the boys. N.T., 10/9/02, pp. 264–67 (T.B.). He washed the girls' breasts and vaginas and inserted his finger into N.B.'s and C.N.'s vaginas. N.T., 10/9/02, pp. 232–33 (C.N.); 266 (T.B.).

Williams repeatedly sucked, rubbed or touched the girls' breast and vaginas, often in full view of the other victims. N.T., 10/9/02, pp. 118–20 (D.B.) (defendant touched the inside of her vagina); 175–76 (S.P.); 218–19 (C.N.); 267–69, 275–76 (T.B.). He repeatedly forced N.B., D.B., T.B., S.P., C.N. and T.B.'s brother to suck his penis and sometimes required T.B.'s brother to perform fellatio while rubbing N.B.'s genitals. N.T., 10/9/02, pp. 53–59, 62–65, 87–88 (N.B.); 110–13, 117–18, 124–26, 152 (D.B.); 172–77, 179–83 (S.P.); 272–75 (T.B.). He also inserted his penis into T.B.'s vagina while several other girls were present and stuck his penis between N.B.'s legs. N.T., 10/9/02, pp. 44–46 (N.B.); 126 (D.B.); 270–71 (T.B.). No other adult was present when the attacks took place. N.T., 10/9/02, pp. 183–84 (S.P.).

The jury retired to deliberate on the morning of Friday, October 11, 2002.

---

* Former Justice of the Supreme Court specially assigned to the Superior Court.

N.T., 10/11/02, p. 122. In the early evening, the jury foreperson wrote the following note to the Court:

Can we have the transcripts of what was said [in] the girls['] testimony in court, i.e., the oral testimony given in court, audio tape would be fine. D.B., T.B., S.P., N.B., C.N. Yes or no would be sufficient. Thank you. N.T., 10/11/02, p. 121. The Court responded:

Yes[.] The time required will be approximately five hours. Do you wish to hear it tonight or reconvene Tuesday or begin tonight and continue Tuesday[?] Courts are closed on Monday.

Id. The jury foreperson replied: "Can we only listen to T.B.'s oral testimony in the jury deliberation room?" N.T., 10/11/02, pp. 121–22. The Court informed the jury that "they could either hear the original in the courtroom or a copy in the deliberation room. Production of a copy might take slightly longer." N.T., 10/11/02, p. 122. The jury elected to listen to the original tape in the courtroom with nobody present. Id.

The Court then "determined that the original tape and a technician will be provided to [the jury] in the jury deliberation room so that they can deliberate while listening to the tape privately." Id.

Defense counsel raised the following objection:

[T]he jury has been deliberating since 11:19. And it is now 8:00 p.m. Approximately forty minutes ago or 45 minutes ago the exchange started with the jury and in their second note they came in to clarify the first note. [T]hey indicate they want to hear the testimony of all the five complaining witnesses, the children. And in response to that you told them it would be at least a five hour duration they would have to listen to. You sent that note back and I believe about twenty minutes later they came

back that they only wanted now all of a sudden T.B.'s testimony which is about an hour. My concern is that the jury is feeling some kind of pressure just to resolve this case because of the lateness of the [hour.] It is Friday night, [and] we have a three day holiday weekend coming up, and I am wondering how all of a sudden in that twenty minute period ... they now all of a sudden didn't need to hear the testimony of those girls. I am afraid that the jury may just be feeling pressure, undue pressure. And it is not the court putting undue pressure, nor involving the litigation, it is just the circumstances of the case. N.T., 10/11/02, pp. 122–24.

Counsel requested that "it would probably be best to bring them back Tuesday." N.T., 10/11/02, p. 124.

The Court replied:

That is one of the alternatives presented to them, and they rejected it. So what is your suggestion in lieu of providing them with the testimony that they have now required on the tape? N.T., 10/11/02, pp. 124–25.

Counsel answered: "I don't have one, and my objection is just because of the totality of the circumstances it puts pressure on them to resolve this matter." Id. The Court continued:

[The jury] still [has] choices and they are now very aware of the choices that they have which are to continue today or come back Tuesday or do both. The fact is there aren't any other alternatives unless you have something to suggest. N.T., 10/11/02, p. 126.

Once again, counsel stated: "I don't at this point. I guess the jury is calling the shots here, what they want to do, unless the Court goes through what was said." Id.

The jury continued to deliberate on Friday evening, October 11, 2002, and

Tuesday morning, October 15, 2002, before returning their verdict on the afternoon of October 15th.

¶ 4 Williams filed a direct appeal challenging the trial court's failure to give a jury instruction regarding the credibility of child witnesses, the Commonwealth's failure to comply with Williams' request for a bill of particulars, and the trial court's refusal to allow the continuation of jury deliberations and allowing the jury to hear audiotape testimony during jury deliberations. This Court affirmed the judgment of sentence by unpublished memorandum and the Supreme Court denied further review. *Commonwealth v. Williams*, 860 A.2d 1137 (Pa.Super.2004) (unpublished memorandum), *appeal denied*, 582 Pa. 717, 872 A.2d 1199 (2005).

¶ 5 On May 1, 2006, Williams filed a counseled PCRA petition, which the PCRA court denied without a hearing. This timely appeal followed. Williams complied with the trial court's order to file a concise statement of the issues on appeal pursuant to Pa.R.A.P.1925(b).[1] The trial court issued a written opinion on these issues on July 27, 2007.

¶ 6 Williams presents the following issues for our review:

I. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO PROPERLY OBJECT TO PROCEDURE UTILIZED BY THE TRIAL COURT WHICH DENIED PETITIONER HIS SIXTH AMENDMENT RIGHT TO COUNSEL DURING CRITICAL STAGES OF THE TRIAL, HIS DUE PROCESS RIGHT TO BE PRESENT DURING ALL CRITICAL STAGES OF HIS TRIAL, AND WHICH VIOLATED RULES 602 AND 646?

IS PREJUDICE REQUIRED WHEN AN INEFFECTIVENSS CLAIM RAISES THE DENIAL OF COUNSEL AT A CRITICAL STAGE OF THE PROCEEDINGS, AND IS THE PCRA COURT'S ADDITION OF THE REQUIREMENT OF PREJUDICE IS (sic) CONTRARY TO AND AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED UNITED STATES SUPREME COURT AUTHORITY?

II. IF PREJUDICE IS REQUIRED, CAN [WILLIAMS] DEMONSTRATE PREJUDICE?

III. WERE RULES OF CRIMINAL PROCEDURE 602 AND 646 VIOLATED AND WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO HAVE OBJECTED ON 602 AND 646 GROUNDS AND BECAUSE THE OBJECTION HE DID REGISTER WAS WOEFULLY INADEQUATE TO PRESERVE THE ERRORS?

IV. WAS TRIAL COUNSEL INEFFECTIVE BECAUSE HE FAILED TO REQUEST JURY INSTRUCTIONS PROHIBITING THE JURY FROM USING THE FACT THAT SIX RAPES WERE CONSOLIDATED FOR TRIAL AS PROPENSITY EVIDENCE?

---

1. We note Williams' concise statement consisted of 15 typewritten pages with lengthy discussion and citation to authority, more commonly found within an appellate brief. Despite this apparent impropriety, neither the Commonwealth nor the trial court objected and the issues are clearly set forth, unlike previous cases in which we found waiver where the statement was lengthy and the issues were not clearly identified. *See* Pa. R.A.P.1925(b)(4) and comment to section (b)(4) (requirements for findings of waiver). Therefore, we will address the issues raised.

V. WAS TRIAL COUNSEL ALSO INEFFECTIVE FOR FAILING TO OBJECT TO THE COURT'S CIRCUMSTANTIAL EVIDENCE JURY INSTRUCTION WHICH ACTUALLY INVITED THE JURY TO USE THE EVIDENCE OF THE HOST OF OTHER SEX CRIMES CUMULATIVELY AND AS PROPENSITY EVIDENCE?

VI. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO RAISE AN OBJECTION TO THE COURT'S JURY INSTRUCTIONS THAT POSITIONED THE CASE SO THAT THE JURY WOULD HAVE TO DETERMINE WHO TO BELIEVE–THEREBY PLACING A BURDEN OF BEING BELIEVED ON [WILLIAMS'] TESTIMONY AND HIS DEFENSE– AND ALSO DEPRIVING HIM OF REASONABLE DOUBTS TO WHICH HE WAS ENTITLED UNDER THE FEDERAL CONSTITUTION?

Appellant's Brief at 9.[2]

¶ 7 The standard of review for a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Reaves*, 592 Pa. 134, 141–42, 923 A.2d 1119, 1124 (2007). The PCRA court's findings will not be disturbed on appeal unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super.2001).

¶ 8 To be entitled to relief under the PCRA on a claim of ineffective assistance of counsel, the petitioner must prove: (1) that the underlying legal claim is of argua-

ble merit; (2) that counsel's action or inaction had no reasonable strategic basis designed to effectuate his client's interests; and (3) prejudice, to the extent that there is a reasonable probability that the outcome of the proceedings would have been different if not for counsel's error. *Commonwealth v. Natividad*, 595 Pa. 188, 938 A.2d 310, 321 (2007). The petitioner must satisfy all three prongs of this test to obtain relief under the PCRA. *Id.; Commonwealth v. Basemore*, 560 Pa. 258, 295 n. 23, 744 A.2d 717, 738 n. 23 (2000).

¶ 9 We will address Williams' first three issues together, as they are closely related. Together, these issues raise Williams' contentions that his trial counsel was ineffective for failing to lodge proper objections to the trial court decision to allow the jury to hear an audiotape of one of the child victim's ("T.B.") trial testimony during its deliberations. Williams' trial counsel objected to allowing the jury to hear the audiotape on the grounds that doing so would leave the jury feeling pressured to resolve the matter that evening. N.T., 10/11/03, at 122–124. The trial court denied the objection.

¶ 10 Williams claims that his trial counsel's single objection (re: pressure to rush the jurors) was entirely inadequate. Instead, Williams contends that trial counsel should have objected to the playback of the audiotape on the grounds that it violated (1) his rights under the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution to be represented by counsel at every critical stage of criminal proceedings, (2) his rights under the Due Process Clause of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution to be present at every critical

---

2. The direct appeal in this case was decided subsequent to the filing of *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002) so that

the ineffectiveness claims are properly raised within the context of a PCRA petition and could not have been raised on direct appeal.

stage of criminal proceedings; (3) Rule 602(A) of the Pennsylvania Rules of Criminal Procedure, and (4) Rule 646(B) of the Pennsylvania Rules of Criminal Procedure. We will address these arguments in turn.

### (1) Williams' constitutional right to be represented by counsel

■ ¶ 11 A person subject to criminal prosecution has a constitutional right to counsel pursuant to the Sixth Amendment to the United States Constitution[3] and Article I, § 9 of the Pennsylvania Constitution. *Commonwealth v. Johnson*, 574 Pa. 5, 12, 828 A.2d 1009, 1013 (2003); *Commonwealth v. Arroyo*, 555 Pa. 125, 723 A.2d 162 (1999). The right to representation throughout criminal proceedings is a basic tenet of our justice system. *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (a criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him").

¶ 12 In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the United States Supreme Court ruled that in some circumstances, a deprivation of the right to counsel as guaranteed by the Sixth Amendment is so fundamental that a violation can never be considered harmless error. *Id.* at 659, 104 S.Ct. 2039; *see also Johnson*, 574 Pa. at 15, 828 A.2d at 1015. In *Cronic*, the Supreme Court identified three situations where prejudice is presumed: (1) counsel fails entirely to subject the prosecution's case to meaningful adversarial testing; (2) counsel is called upon to render assistance under circumstances where competent counsel very likely could not provide such assistance; and (3) a complete denial of counsel at a critical stage of the criminal proceedings. *Cronic*, 466 U.S. at 659–60 & n. 25, 104 S.Ct. 2039. In these circumstances, it is prejudice *per se* mandating automatic reversal because "the adversary system [is] presumptively unreliable." *Roe v. Flores–Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Cronic*, 466 U.S. at 659, 104 S.Ct. 2039).

■ ¶ 13 Williams argues he is entitled to a finding of prejudice *per se* because the trial court's decision to allow the jury to listen to the audiotape of T.B.'s testimony in the jury room during deliberations deprived him of his right to counsel at a critical stage of his trial, in violation of *Cronic*. A "critical stage" in a criminal proceeding has been defined to include every stage where the substantive rights of the accused "may be lost if not exercised at [that] stage." *Mempa v. Rhay*, 389 U.S. 128, 135, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). According to our Supreme Court, a "critical stage" in a criminal proceeding "is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Johnson*, 574 Pa. at 13, 828 A.2d at 1014.

¶ 14 The playback of the audiotape of T.B.'s trial testimony was not a critical stage of the criminal proceedings. There was no opportunity for judicial discretion during the playing of the audiotape, as the trial court, after consulting with counsel for both parties, had already determined what portions of the audiotape the jury would be allowed to hear (i.e., only T.B.'s testimony). N.T., 10/11/03, at 120–129. And there was no danger of a loss of legal rights, since the jury merely heard an exact word-for-word recording of T.B.'s testimony as it was rendered in the courtroom during the prosecution's case in chief. Generally speaking, defense counsel has no right to be present during jury

---

**3.** An accused's rights under the Sixth Amendment to the United States Constitution extend to proceedings in state courts through the Due Process Clause of the Fourteenth Amendment. *Commonwealth v. Wall*, 413 Pa.Super. 599, 606 A.2d 449, 455 n. 8 (1992).

deliberations. Even if he had been present during the playing of the audiotape in this case, Williams' counsel would have had no ability to do or say anything to represent his client's interests or to protect his constitutional rights.[4] Any objections made during the original testimony were on the audiotape, and any objections not made by that point in time would have been waived. Williams' counsel cross-examined T.B. at trial. N.T., 10/9/02, at 281–291. The jury heard the cross-examination again on the audiotape. No further right to cross-examine would have been available during the jury deliberations.

¶ 15 On this issue, we find persuasive the decision of the United States Court of Appeals for the Third Court in *United States v. Toliver*, 330 F.3d 607 (3d Cir. 2003). In *Toliver*, the trial judge responded to a jury inquiry about the precise wording of a witness' testimony by providing the jury with an excerpt from the trial transcript. Comparing the situation to those where trial judges impermissibly provided juries with supplemental jury instructions outside the presence of defense counsel, the Third Circuit held that the trial judge's action (providing the jury with a portion of the trial transcript [5]) was not a "critical stage" for purposes of a Sixth Amendment right to counsel argument:

We are unpersuaded by Toliver's attempt to bring his claim under *Cronic*. The trial judge's response to the jury in this case was not akin to the supplemental jury instructions in *Curtis* [*v. Duval*, 124 F.3d 1 (1st Cir.1997) ] and *French* [*v. Jones*, 282 F.3d 893 (6th Cir.2002) ]. Clarifying the substantive elements of the charged offense (*Curtis* ) or instructing a deadlocked jury (*French* ) affirmatively guides jurors as to how they should fulfill their decisionmaking function. But submitting verbatim specifically excerpted record testimony that the jury had itself requested does not similarly 'instruct' the jury."

*Id.* at 614; *cf. United States v. Grace*, 264 Fed.Appx. 780 (11th Cir.2008) (transcripts of recorded conversations could go to jury during deliberations).

¶ 16 In this case, allowing the jury to listen to an audiotape of specifically requested trial testimony did not "instruct" the jury any more than providing the jury with portions of the trial transcript did in *Toliver*. In the absence of any attempt by the trial court to provide the jury with instruction or advice, no opportunity existed for the exercise of judicial discretion. Likewise, no opportunity existed for counsel to assert or protect any of Williams' legal rights, including, for instance, by rec-

---

4. The learned dissent indicates that counsel's presence was required in the event that portions of the audiotape were garbled or difficult to hear. While we share concerns over possible mechanical malfunctions, there is no evidence in the record before us at present to suggest that such issues arose in connection with the playback of T.B.'s testimony. Speculation about what might have occurred is not a basis for a finding of prejudice *per se* under *Cronic*. *See generally United States v. Holton*, 116 F.3d 1536, 1545–46 (D.C.Cir.1997) (in the absence of any evidence suggesting any problems in replaying an audiotape for the jury during deliberations outside of the presence of counsel, "there is no reason to presume harm"); *Hegler v. Borg*, 50 F.3d 1472, 1477

(9th Cir.1995) ("Admittedly, Hegler could have objected to inaccuracies in the readback, or protested against any impropriety on the court reporter's part; but any mistake or lapse that may have tainted the jury's decision is capable of being quantified and assessed in an evidentiary hearing.") (citing *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)).

5. It should be noted that the Federal Rules of Criminal Procedure have no counterpart to Pa.R.Crim.P 646(B), which expressly forbids the jury to be given a transcript of the trial proceedings during deliberations. Pa. R.Crim.P. 646(B) will be discussed in detail hereinbelow.

ommending alternative instructions more favorable to Williams' interests. *See, e.g., Johnson,* 574 Pa. at 14, 828 A.2d at 1014 (reading of supplemental jury instructions is a critical stage of trial because "counsel may object or suggest an alternative wording").

¶ 17 The learned dissent contends that two cases compel a different result here. First, in *Commonwealth v. Feliciano,* 884 A.2d 901 (Pa.Super.2005), we ruled that a defendant was not deprived of his right to counsel when the trial court failed to notify counsel that a juror had been granted a short break from deliberations. *Id.* at 904. In reaching this decision, we noted that "jury deliberations have been viewed as critical stages to which the right to counsel attaches." *Id.* The critical stages of jury deliberation as explained in *Feliciano,* however, are those occasions when communications between the trial court and the jury during its deliberations become necessary, including instances in which the jury has questions, requests, or considers itself deadlocked. *See, e.g., Siverson v. O'Leary,* 764 F.2d 1208, 1214 (7th Cir.1985) (violation of Sixth Amendment right to counsel when appointed trial counsel left the courthouse when the jury retired and did not return throughout during jury deliberations or the return of the verdict). No such issue exists in Williams' case, as trial counsel was available and did consult with the trial court when the jury asked for a replay of the audiotape of T.B.'s testimony.

¶ 18 Second, in *Commonwealth v. Peterman,* 430 Pa. 627, 244 A.2d 723 (1968), our Supreme Court concluded that a trial court's decision to summarize a witness' testimony from his own notes for the jury during deliberations was reversible error. *Id.* at 636, 244 A.2d at 728. Prior to summarizing, the trial judge granted a jury request to have the witness' testimony read back to them by the court reporter. The Supreme Court took no issue with this decision, stating that the "if[ ] in the exercise of the court's discretion, a review of testimony is allowed, such review must be conducted before the court, the parties and counsel." *Id.* at 633, 244 A.2d at 726. The Supreme Court described this approach (reading in open court in the presence of the parties and counsel) as the "proper procedure" for read backs of trial testimony. *Id.*

¶ 19 Contrary to the astute analysis of the dissent, we find *Peterman* to be inapposite here for at least two reasons. First, the defendant in *Peterman* did not allege any violation of his right to counsel under either the United States or Pennsylvania Constitutions. As a result, in *Peterman* our Supreme Court neither found nor even discussed whether a read back of trial testimony is a "critical stage" of criminal proceedings.[6]

¶ 20 Second, the case *sub judice* does not involve a read back of trial testimony by a court reporter, and thus the trial court's failure to abide by "proper procedure" described in *Peterman* is of no issue here. Instead, in this case the trial court decided to allow specifically selected evi-

---

6. We note that most courts have found no constitutional deformities in connection with read backs of trial testimony outside of counsel's presence, so long as counsel was consulted regarding the decision to read back the testimony. *See, e.g., La Crosse v. Kernan,* 244 F.3d 702, 707–08 (9th Cir.2001) (refusing to find a read back of testimony to be a "critical stage" of trial for Sixth Amendment purposes); *United States v. Osterbrock,* 891 F.2d 1216, 1219–20 (6th Cir.1989) (counsel not ineffective for failing to object to read back of testimony to the jury in his absence); *but see People v. Williams,* 2006 WL 853395 at *3 (Cal.App. 5th Dist., April 4, 2006) ("A jury request for a rereading of testimony is a critical part of the trial to which the right of counsel applies."), *judgment vacated on other grounds,* 549 U.S. 1197, 127 S.Ct. 1246, 167 L.Ed.2d 61 (2007).

dence (the trial testimony of T.B. in audiotape form) to be provided to the jury for its review during its deliberations. As discussed later in this Opinion, this action did not violate Pa.R.Crim.P. 646, which governs what materials are permitted to be in the possession of the jury during its deliberations. As such, we ascertain no basis on which to conclude that Williams was deprived of counsel at a critical stage of his criminal proceedings or that the trial court's decision to allow the jury to hear the audiotape of T.B.'s testimony so tainted Williams' trial that he is entitled to a finding of prejudice *per se* under *Cronic.*

¶ 21 Finally, we find additional support for this conclusion in our Supreme Court's decision in *Commonwealth v. Bango,* 560 Pa. 84, 742 A.2d 1070 (1999). In *Bango,* at trial the prosecution introduced into evidence tape-recorded telephone conversations of seventeen different people discussing sales of controlled substances. During deliberations, the jury asked for the opportunity to review the tape recordings (and corresponding transcripts) in the jury room during their deliberations. Over defense counsel's objections, the trial judge allowed the tapes and transcripts to go out with the jury with appropriate instructions. Our Supreme Court, after concluding that the trial court's decision did not violate Pa.R.Crim.P. 646 (then numbered Rule 1114), affirmed, finding no abuse of discretion. *Id.* at 89, 742 A.2d at 1072 (citing *Commonwealth v. Hawkins,* 549 Pa. 352, 393, 701 A.2d 492, 512 (1997) (trial court's decision regarding materials that may be taken out with the jury will not be reversed unless there is an abuse of discretion or a violation of court rules)).

¶ 22 For these reasons, we reject Williams' contention on appeal that his rights to counsel at critical stages of the criminal proceedings were violated.

■ **Williams' constitutional right to be present**

■ ¶ 23 Williams contends that trial counsel also failed to preserve by objection his constitutional rights to be present at every critical stage of criminal proceedings. The United States Supreme Court has ruled that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution [7] requires that an accused, "even in situations where the defendant is not actually confronting witnesses or evidence against him," has a constitutional right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *rev'd on other grounds, Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Accordingly, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). A coextensive constitutional right exists under Article I, § 9 of the Pennsylvania Constitution. *Commonwealth v. Hill,* 737 A.2d 255, 258 (Pa.Super.1999); *Commonwealth v. Carter,* 219 Pa.Super. 280, 281 A.2d 75, 80 (1971) (adopting the *Snyder* "fullness of the opportunity" test).

■ ¶ 24 This constitutional right to be present is not guaranteed "when presence would be useless, or the benefit but a shadow." *Snyder,* 291 U.S. at 106–07, 54

---

7. The right to be present has also been found under the Confrontation Clause of the Sixth Amendment. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). In his appellate brief, Williams does not assert that his right to be present under the Confrontation Clause has been violated.

S.Ct. 330. Due process only requires the defendant's presence "to the extent that a fair and just hearing would be thwarted by his absence." *Stincer,* 482 U.S. at 745, 107 S.Ct. 2658 (quoting *Snyder,* 291 U.S. at 108, 54 S.Ct. 330). Based upon this standard, in *Stincer* the U.S. Supreme Court reversed a decision of the Supreme Court of Kentucky finding that a defendant's presence was critical at a preliminary hearing evaluating the competence of two young girls to testify at trial. *Id.* at 746, 107 S.Ct. 2658 ("All the questions, instead, were directed solely to each child's ability to recollect and narrate facts, to her ability to distinguish between truth and falsehood, and to her sense of moral obligation to tell the truth."). Likewise, in *Commonwealth v. McNamara,* 443 Pa.Super. 448, 662 A.2d 9 (1995), this Court found that defendant's absence during the jury selection process in Philadelphia County did not violate his constitutional right to due process. *Id.* at 15 ("[W]e note that at no point in that procedure are the jurors introduced to the substantive issues of an accused's case. Rather, all questions are designed to elicit background information ...."); *see also Carter,* 281 A.2d at 80 (no due process violation where defendant not present when alternate juror substituted as a qualified replacement juror).

¶ 25 Williams' presence when the jurors listened to the audiotape during their deliberations would not have contributed in any way to the fairness of the proceedings. We note that Williams was present during T.B.'s testimony at trial and his counsel was provided with a full and fair opportunity to cross-examine the witness. During the playback of the audiotape, jurors heard a verbatim recording of this testimony, and neither the defendant nor his counsel, even if they had been present, would have

had any ability to alter, modify or improve the content of the information conveyed to the jury. As such, we discern no basis upon which to conclude that Williams' presence would have had a reasonably substantial effect on his ability to defend against the charges for which he was on trial.

¶ 26 This determination is consistent with two decisions of the United States Court of Appeals for the District of Columbia Circuit. In *United States v. Holton,* 116 F.3d 1536 (D.C.Cir.1997), the Court of Appeals rejected all of defendants' constitutional arguments to the trial court's decision to allow the jury to listen to the replaying of taped evidence during jury deliberations. *Id.* at 1546. In so ruling, the Court of Appeals relied upon its own prior decision in *United States v. Sobamowo,* 892 F.2d 90 (D.C.Cir.1989). In *Sobamowo,* then-Judge Ruth Bader Ginsburg concluded that "the tape replaying [for the jury during deliberations is] not a stage of trial implicating the confrontation clause or Rule 43(a)." [8] *Id.* at 96 (citing *Dallago v. United States,* 427 F.2d 546, 552–53 (D.C.Cir.1969) (defendant's presence is not required when exhibits are submitted to the jury during deliberations)).

¶ 27 Accordingly, we find Williams' contention on appeal that his constitutional due process rights to be present at all critical stages of the criminal proceedings were violated to be meritless.

### (3) Violation of Pa.R.Crim.P. 602

∎ ¶ 28 Pa.R.Crim.P. 602(A) provides that "[t]he defendant shall be present at every stage of the trial." Rule 602(A) provides an even broader right for a defendant to be present at trial than do our state and federal constitutions, since, as

---

8. Similar to Pa.R.Crim.P. 602(A), Federal Rule of Criminal Procedure provides that "[t]he defendant shall be present ... at every

stage of the trial...." We address the trial court's violation of Rule 602(A) in this case hereinbelow.

discussed above, the constitutional right to be present extends only to stages where presence is "critical" to the outcome of the trial. Rule 602(A) requires the defendant's presence at *every* stage of the trial, without qualification.

¶ 29 The trial court's failure to have Williams present while the audiotape was played for the jury constituted a violation of Rule 602(A). In its written opinion, the trial court admits as much: "This language [of Rule 602(A)] appears to encompass all stages of trial, including non-critical stages such as the submission of tape-recorded testimony to the jury during deliberations." Trial Court Opinion at 15.

¶ 30 The trial court refused to grant Williams a new trial based on the violation of Rule 602(A) because it found that the failure was not prejudicial to Williams. In his appellate brief, Williams does not direct us to any authority holding that non-constitutional violations of Rule 602 are prejudicial *per se,* and we are not aware of any such authority. As a result, we will consider whether the trial court's violation of Rule 602(A) here constituted harmless error, which our Supreme Court has defined as follows: "[A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Commonwealth v. Strong,* 575 Pa. 433, 437, 836 A.2d 884, 887 (2003) (quoting *Commonwealth v. Story,* 476 Pa. 391, 412, 383 A.2d 155, 166 (1978)).

¶ 31 In his appellate brief, Williams argues that allowing the audiotape to be replayed in the jury deliberation room was prejudicial because "the public trial ceased" and he was instead "now being accused in secret." Appellant's Brief at 26. We disagree. The jury did not hear new or different testimony in private, out of the presence of Williams. Instead, the jury merely heard a verbatim recording of exactly what transpired in open court in Williams' presence. Moreover, in addition to hearing T.B.'s direct testimony again, the jury also heard again her cross-examination by Williams' trial counsel (which Williams has not alleged to have been inadequate or ineffective in any way). As such, the jury did not hear any accusations or testimony that did not take place in open court—and Williams was not accused of anything in secret.

¶ 32 Moreover, the jury's verdict reflects no prejudice to Williams. The testimony of T.B. replayed for the jury included a wide range of accusations against Williams involving all of the child victims, including her rape, N.T., 10/9/02, at 270, digital penetration of N.B., *id.* at 266, forced oral sex by N.B. and D.B., *id.* at 272–73, and forced oral sex on T.B., N.B., D.B. and S.P. *Id.* at 266–70. The verdict, however, establishes that the jury did not adopt T.B.'s testimony without reflection. Instead, the verdict shows that the jury carefully considered all of the evidence presented, including Williams' denials of any wrongdoing, as it acquitted Williams on various charges, including attempted rape against S.P. and aggravated indecent assault against both D.B. and C.N. N.T., 10/15/02, at 4–10.

¶ 33 Rather than reflecting a prejudice against Williams as a result of listening to T.B.'s testimony for a second time, the jury's verdict shows that it carefully considered and weighed all of the evidence for each specific charge and against each specific victim. Based on our careful review of the evidentiary record, we are convinced that the jury convicted Williams on specific charges based upon the compelling testimony of all of the young victims, and did not place any undue weight on the testimony of T.B. As a result, we conclude that the trial court's violation of Rule 602 in

this case was harmless error and that Williams suffered no prejudice as a result.

### (4) Violation of Pa.R.Crim.P. 646(B)

¶ 34 Pa.R.Crim.P 646(B) provides as follows:

(B) During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information;

(4) written jury instructions.

■ ¶ 35 Williams contends that allowing a jury to listen an audiotape of trial testimony during deliberations violates Rule 646(B)(1)'s prohibition against permitting the jury to have "a transcript of any trial testimony."[9] In other words, Williams argues that a transcript need not be in written form for purposes of Rule 646(B), and that an audiotape is in fact a type of transcript prohibited by the rule. The issue is an important one, for our Supreme Court has held that a violation of the express language of Rule 646(B) is reversible error and constitutes automatic grounds for a new trial. *Commonwealth v. Karaffa*, 551 Pa. 173, 178–79, 709 A.2d 887, 890 (1998) (holding that a violation is "intrinsically prejudicial and it is this intrinsic, unfair prejudice that requires granting a new trial").

¶ 36 Black's Law Dictionary (8th ed.) defines "transcript" as "[a] *handwritten, printed, or typed* copy of testimony given orally . . . the official record of proceedings in a trial or hearing, as taken down by a court reporter." (emphasis added). Moreover, in *Commonwealth v. Canales,* 454 Pa. 422, 311 A.2d 572 (1973), our Supreme Court explained the reason for the prohibition regarding to the trial transcripts in Rule 646 (Rule 1114[10]):

Rule 1114 forbids the sending out of any portion of the trial transcript with the jury. Even before Rule 1114 was adopted, *Commonwealth v. Ware,* 137 Pa. 465, 479, 20 A. 806, 808 (1890), said that '(t)he sending out of a part of the testimony to the jury room is without precedent and (was) palpable error.' The reason for the prohibition is that the presence in the jury room of the ***physical embodiment of a portion of the trial testimony in written form*** may have the effect of increasing the probability that the jury will accept the testimony as credible.

*Id.* at 427–28, 311 A.2d at 575 (emphasis added). Without question, an audiotape is not a "physical embodiment . . . in written form" of trial testimony.

¶ 37 This Court's decision in *Commonwealth v. Gladden,* 445 Pa.Super. 434, 665 A.2d 1201 (1995), is also instructive in this context. In *Gladden,* the trial court granted the jury's request during deliberations to have the defendant's confession read back to them by the court reporter. This Court found no violation of Rule 1114:

In this case, however, [Rule 1114] does not apply as stated above: the jury was

---

**9.** Williams raised this same issue on direct appeal, but a panel of this Court found the issue had been waived as trial counsel failed to object based upon Rule 646(B). *Commonwealth v. Williams,* 829 and 830 EDA 2003, unpublished memorandum at 8, 860 A.2d 1137 (Pa.Super. filed August 19, 2004). In the PCRA petition at issue here, Williams raises the same issue but in the context of an ineffectiveness claim, which permits us to review the issue at this time. *See Common-* *wealth v. Collins,* 585 Pa. 45, 60–61, 888 A.2d 564, 573 (2005) (ineffectiveness raises a distinct legal ground for purposes of the PCRA and must be treated as such although claim may fail for same reasons discussed on direct appeal).

**10.** The Supreme Court revised and re-numbered Rule 1114 as Rule 646, effective April 1, 2001.

not given a written confession, part of the trial transcript, or any of the other things specifically prohibited by Rule 1114. Therefore, Rule 1114 is inapplicable. 'When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request.'

*Id.* at 1205 (quoting *Commonwealth v. Johnson,* 421 Pa.Super. 433, 618 A.2d 415, 418 (1992), affirmed, 538 Pa. 148, 646 A.2d 1170 (1994)), overruled on other grounds, *Commonwealth v. Archer,* 722 A.2d 203 (Pa.Super.1998). While a court reporter reading trial testimony to the jury is dissimilar in some ways to an audiotape, it does constitute a verbatim word-for-word recitation of trial testimony in audible nonwritten form, which we concluded in *Gladden* did not violate the then-applicable rule.

¶ 38 And in *Commonwealth v. Foster,* 425 Pa.Super. 61, 624 A.2d 144 (1993), this Court refused to equate videotaped confessions with written confessions. Noting that Rule 1114 only prohibited the jury from receiving written confessions, we refused to find a violation of the rule when the trial court allowed the jury to watch a confession on videotape:

> It is tempting to accept Appellant's argument in light of technological advances which have occurred since the Supreme Court fashioned the rule. To do so, however, would violate the well-settled rule of statutory construction that the letter of the law cannot be ignored.

*Id.* at 149; *see also id.* at 154 ("I am convinced the Rules Committee expressly included those *written recordings* of a person's statements, i.e., trial transcripts and written confessions, because their character is markedly different from videotaped confessions (and oral confessions).") (em-phasis added) (Popovich, J., concurring and dissenting).

¶ 39 In response to this Court's decision in *Foster,* in 1995 the Supreme Court amended Rule 1114 (now Rule 646(B)(2)) to prohibit the jury from receiving "a copy of any written or *otherwise recorded* confession by the defendant." Importantly, the Supreme Court did *not* also amend the portion of Rule 1114 (now Rule 646(B)(1)) prohibiting trial transcripts in the deliberations room, even in light of cases like *Canales, supra,* interpreting the term "transcript" under the rule to refer to a "physical embodiment" of trial testimony "in written form." *Canales,* 454 Pa. at 427–28, 311 A.2d at 575. As a result, we must conclude that the Supreme Court intends the term "transcript" to refer to the memorialization of trial testimony *in written form.* Even if we were inclined to agree that there is no substantive difference between a written transcript and an audiotape verbatim presentation of the testimony at trial, we are bound by the letter of the law. Accordingly, an audiotape does not constitute a "transcript" for purposes of Rule 646(B)(1).

■ ¶ 40 Although we conclude that the trial court's decision to allow the jury to listen to the audiotape of T.B.'s trial testimony did not constitute a violation of the express language of Rule 646(B)(1), our inquiry is not at an end. Our Supreme Court has indicated that when items not expressly prohibited by Rule 646 are sent out with the jury during deliberations, we must determine whether the trial court abused its discretion by doing so. *Commonwealth v. Riggins,* 478 Pa. 222, 232–33, 386 A.2d 520, 525 (1978). In a more recent case, this Court ruled that this inquiry requires us to determine whether providing the item to the jury was prejudicial: "If there is a likelihood the importance of the evidence will be skewed, prejudice may

be found; if not, there is no prejudice *per se* and the error is harmless." *Commonwealth v. Dupre*, 866 A.2d 1089, 1103 (Pa.Super.2005), *appeal denied*, 583 Pa. 694, 879 A.2d 781 (2005).

¶ 41 In our discussion of the trial court's violation of Rule 602 hereinabove, we have already determined that there is no evidence or other basis in the record on appeal to conclude that the trial court's decision to allow the jury to listen to the audiotape was prejudicial to Williams. As a result, Williams' contention that he is entitled to a new trial because of his trial counsel's failure to lodge an objection pursuant to Rule 646(B)(1) is without merit.

¶ 42 Williams' three remaining issues on appeal involve claims of error in connection with the trial court's jury instructions. In considering these issues, we follow certain basic principles to guide our determinations. First, "[w]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." *Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa.Super.2007). And second, "a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id.*

¶ 43 For his fourth issue on appeal, Williams claims that his trial counsel was ineffective for failing to request an instruction requiring jurors to view each charge individually and not to consider the fact that he was charged with multiple crimes against six victims. Williams contends that the instructions should have informed jurors that proof of one crime was not probative of guilt of another crime.

¶ 44 Viewing the trial court's instructions as a whole, we find no merit in Williams' contentions. The trial court instructed the jury that Williams "is charged with committing these specific crimes against different individuals and at different times and on a different number of occasions with regard to the victims." N.T., 10/11/02, at 79. The trial court also identified for the jury the types and number of charges against Williams in connection with each victim. *Id.* at 92–96. Finally, the trial court advised the jury that the verdict slip stated the number of charges Williams faced with regard to each victim, and reiterated that they should reach a separate verdict on each particular charge. *Id.* Taken as a whole, we conclude that the jury instructions were clear regarding the nature of the charges against Williams as well as the need for the jury's separate consideration of each charge against each victim, and did not convey any suggestion that all of the charges should be lumped and decided as a whole. We also note that the jury's verdict, pursuant to which Williams was convicted on some charges and acquitted of others, shows that the jury understood the instructions and complied with them. N.T., 10/15/02, at 4–10.

¶ 45 For his fifth issue on appeal, Williams claims that his trial counsel was ineffective for failing to object to the trial court's charge on circumstantial evidence. The trial court instructed the jury members about direct and circumstantial evidence, and advised them that both forms of evidence "are examples of the way we receive in formation and analyze it in our everyday lives." N.T., 10/11/02, at 76–77. Williams now contends that this reference to "everyday lives" necessitated another instruction, since "[j]urors in their 'everyday lives' will believe—unless specifically told otherwise—that a person who commits one or two sex crimes is far more likely to have committed others and that the fact that he committed such crimes is

evidence that he committed others." Appellant's Brief at 37.

¶ 46 We find no merit to Williams' argument. Based upon our review of the evidentiary record, the Commonwealth introduced competent evidence to support each and every crime for which Williams' was convicted, and Williams did not contest the sufficiency of the evidence in his direct appeal. Moreover, as noted above, the trial court instructed the jurors to render separate verdicts on every charge with respect to every victim, and the jury's verdict reflects that it understood and complied with that instruction. As such, Williams offers no basis on which to conclude that the jury convicted him of multiple offenses based upon evidence supporting convictions on just one or two charges. As a result, we find no error in the trial court's charge on circumstantial evidence.

¶ 47 For his last issue on appeal, Williams argues trial counsel was ineffective for failing to object to the trial court's jury instructions regarding how to resolve conflicts in the testimony. We recently rejected a substantially identical argument in *Commonwealth v. Kerrigan*, 920 A.2d 190, 197–198 (Pa.Super.2007), and consider that decision to be dispositive of Williams' argument on appeal here. Williams concedes the applicability of *Kerrigan* in this case and states in his appellate brief that he raises the issue here only to "preserve it for federal habeas corpus eligibility." Appellant's Brief at 40.

¶ 48 Finding no basis on which to disturb the findings of the trial court, we affirm the PCRA order dated October 17, 2006.

¶ 49 Order affirmed. Jurisdiction relinquished.

¶ 50 Fitzgerald, J. files a Dissenting Opinion.

## DISSENTING OPINION BY FITZGERALD, J.:

¶ 1 I must respectfully depart from the majority's thoughtful analysis. Primarily, I depart in the analysis of whether jury deliberations constitute a "critical stage," and counsel's right to be present during playback of testimony. I believe our courts have generally accepted that jury deliberations constitute a critical stage. *See, e.g., Commonwealth v. Feliciano*, 884 A.2d 901, 904 (Pa.Super.2005) ("We do not disagree with Appellant that jury deliberations have been viewed as critical stages to which the right to counsel attaches") (citing *Commonwealth v. D'Amato*, 579 Pa. 490, 517, 856 A.2d 806, 822 (2004)). As such, I would find that Appellant did have the right to counsel during the deliberations, although, I note, Appellant was actually represented by counsel.

¶ 2 Nonetheless, I emphasize that the right to counsel when the jury makes a request should not be taken lightly, particularly when the jury wishes to review testimony again. Counsel must be present in order to ensure that "the resulting review[ ] 'does not place undue emphasis on one witness' testimony.'" *Commonwealth v. Small*, 559 Pa. 423, 438, 741 A.2d 666, 674 (1999) (quoting *Commonwealth v. Peterman*, 430 Pa. 627, 631, 244 A.2d 723, 726 (1968)). Normally, this purpose is achieved when, upon the trial court's granting a request for the court reporter to read back a portion of the transcript, such request is fulfilled in open court with both parties present. As the *Peterman* Court stated:

But where a jury, in order to refresh their recollection, requests a reading of a portion of the testimony actually given at the trial, it is a matter within the discretion of the trial court whether to grant such request. If the trial court does grant the request, **the review of**

**testimony must be conducted in open court in the presence of parties and their counsel.** . . . [I]f, in the exercise of the court's discretion, a review of testimony is allowed, such review must be conducted before the court, the parties and counsel.

*Peterman,* 430 Pa. at 631–32, 244 A.2d at 726 (emphasis added). Counsel's presence is required in order to ensure, *inter alia,* that the reading is accurate, and that the court reporter does not emphasize any particular portion of the transcript. *See id.* at 633–34, 244 A.2d at 727 (noting concern that trial court, upon summarizing its notes of requested testimony, placed undue, even if unintentional, emphasis on certain aspects of testimony).

¶ 3 Once the trial court sent the audiotape into the jury deliberation room, without the presence of the judge, Appellant, and counsel, the audiotape became an exhibit for the jury to deliberate over. There is no doubt that the trial court intended this result, since the trial court stated, "We have now determined that the original tape and a technician will be provided to them in the jury deliberation room **so that they can deliberate while listening** to the tape privately." N.T., 10/11/03, at 122 (emphasis added). However, this result is exactly what the *Peterman* Court sought to avoid when stating that "the review of testimony must be conducted in open court in the presence of parties and their counsel." *Peterman,* 430 Pa. at 632, 244 A.2d at 726. Accordingly, by sending the audiotape to the jury as an exhibit, the trial court improperly denied Appellant his right, pursuant to *Peterman,* to be present during playback of testimony.

¶ 4 As the learned majority notes, audiotape playback of testimony lessens the concern over potential inaccuracies or unnecessary emphasis. Nonetheless, they do not eliminate those concerns completely. Recording of certain portions of testimony may be garbled or difficult to hear, or temporary failure in the recording may cause the loss of some of the testimony on playback. Moreover, just as counsel should be present to ensure that "undue emphasis" is not placed on a witness's testimony by the court or court reporter, I conclude that counsel must also be present to ensure that the audio operator, whether intentional or unintentional, does not emphasize any particular portion of the testimony.[11] Thus, while I agree with the majority that Appellant does not necessarily have a right to have counsel present in the jury room during jury deliberations, he does have a right to be present, and to have counsel present, during a recitation of testimony to the jury, whether in written or audio form. *See Peterman, supra.* Accordingly, I would conclude that if trial counsel had objected properly to the playback of the audiotape in the deliberation room, the trial court would have erred if it denied that objection.

¶ 5 Therefore, the final step is to determine whether this error was prejudicial. I agree with the majority that we should interpret *Commonwealth v. Karaffa,* 551 Pa. 173, 709 A.2d 887 (1998), to necessitate a finding of prejudice *per se* if there is a violation of any part of Rule 646. *See id.* at 178–79, 709 A.2d at 890 (holding that sending written jury instructions to jury during deliberations is "intrinsically prejudicial"); *see also* Pa.R.A.P. 646(B)(4). I also agree with the majority that the language of Rule 646 does not expressly forbid sending back an audiotape to the jury. Nonetheless, I believe *Karaffa* and *Commonwealth v. Oleynik,* 524 Pa. 41, 568

---

11. For example, the audio operator should not repeatedly play back a specific portion of the testimony, even upon request by the jury.

A.2d 1238 (1990), necessitate a finding of prejudice *per se* in the instant matter. Our Supreme Court in *Oleynik* stated:

> The cautionary statement made by the trial judge regarding the weight to be afforded the written instructions was wholly inadequate to cure any possible prejudice. The likelihood that a jury would assess undue weight to the points of law in written instructions and possibly misinterpret or misapply that law offered in a written statement was the basis for insisting on oral instructions.... Where a jury is permitted to take with them written instructions during their deliberations, a question may arise as to the appropriate application of the written instruction when resolving an issue in the cause.

*Oleynik*, 524 Pa. at 46, 568 A.2d at 1241. Similarly, the *Peterman* Court was concerned about the likelihood that the jury would assess undue weight to particular portions of testimony if recitation of the testimony is not conducted in open court in the presence of the trial judge and the parties. Accordingly, I would conclude that by virtue of sending the audiotape to the jury deliberation room for the jury to listen to alone, Appellant was "intrinsically prejudiced." *See Karaffa, supra; see also Oleynik, supra; Peterman, supra.*

¶ 6 Finally, the learned majority cites to *Commonwealth v. Bango*, 560 Pa. 84, 454 Pa.Super. 339, 742 A.2d 1070 (1999), in support of their analysis. I agree fully that the trial court enjoys great discretion in determining whether it will allow the jury to review recordings or transcripts introduced **as exhibits** at trial. I emphasize, however, that the tapes and transcripts at issue in *Bango* involved conver-

sations that occurred outside of the trial. *See id.* at 86–87, 742 A.2d at 1071–72 (noting that the tapes and transcripts involved wiretaps recording conversations between the appellant and seventeen other people during the course of drug transactions). Thus, this aspect of the *Bango* decision holds no legal weight over instances where the jury wishes to review recordings or transcripts of actual testimony or statements made **during** the trial. *See Peterman, supra* (expressing concern about jury's review of witness testimony); *Karaffa, supra* (expressing concern about jury's review of trial court's jury instructions in written form); *Oleynik, supra* (same as *Karaffa*). Moreover, the *Bango* Court emphasized that the trial court's cautionary instructions to the jury showed its decision to allow the jury to review the transcripts was not only reasonable, but perhaps even necessary, given the confusion regarding which of the seventeen or eighteen voices it heard at a given time. *Bango, supra* at 89–90, 742 A.2d at 1073. No such potential for confusion existed instantly; therefore, I believe *Bango* is inapposite.

¶ 7 In conclusion, I find that prejudicial error occurs when the jury is in possession of any recorded testimony in the deliberation room. I would find that there is no reasonable basis for trial counsel to have failed to object to the trial court's action. Accordingly, I would find trial counsel ineffective and reverse the PCRA court's order denying Appellant relief on his petition.