J-S18003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEMETRIUS COX, | |
| Appellant | No. 2176 EDA 2013 |

Appeal from the Judgment of Sentence Entered March 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000121-2010

BEFORE:  BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 12, 2015**

Appellant, Demetrius Cox, appeals from the judgement of sentence of life imprisonment following his conviction for first degree murder and related offenses.  Appellant challenges the sufficiency of the evidence supporting his conviction.  He also contends that the trial court erred when it permitted the jury to review the statements of certain witnesses during their deliberations.  After careful review, we affirm.

The trial court briefly summarized the facts adduced at trial as follows:

At trial, the jury heard testimony from numerous civilian witnesses, police officers, detectives, as well as the medical examiner, Dr. Collins.  Multiple witnesses testified that [Steven] Mapp and [Appellant] were part of a group of young men who had an ongoing rivalry over the sale of drugs with another neighborhood group with which Jabar Thomas was associated.  The rivalry resulted in a number of homicides, including the

instant murder of Jabar Thomas.[1] The testimony of Neal Kitchen established that, shortly before Thomas was killed, [Appellant] and Mapp were walking up the 1500 block of Dickinson Street and Mapp was telling people to "watch the corner." The testimony of Tangia Hargust[] and Raheem Hargust corroborated that of Neal Kitchen, affirming Mapp's instruction to "watch the corners," and further established that [Appellant] was telling people to go inside the house. The testimony of these three witnesses also established that one to two minutes after [Appellant] and Mapp passed the 1500 block of Dickinson Street, numerous gunshots were fired and [Appellant] and Mapp were subsequently seen running back toward Dickinson Street before cutting through an alley between South Hicks and 15th Street. As they were running by, the back of a gun was visibly protruding from [Appellant]'s waistband. [Appellant] and Mapp were known to carry guns and had been saying that all of the guys from the block of South Hicks Street and Reed Street were "going to get theirs." In addition, the jury heard testimony from Nelson Jones which established that Thomas had gone into his mother's home on South Hicks Street, exited the home shortly thereafter, and was shot in his car moments later. Mr. Jones testimony corroborated the identification of [Appellant] and Mapp as the shooters and identified both [Appellant] and Mapp as carrying guns. Additionally, he saw [Appellant] and Mapp cut through an alley and run away from the crime scene. Mr. Jones' testimony also established that a few days prior to Thomas' murder, [Appellant] had asked Mr. Jones how he would "get a person" to which Jones responded that "everybody got to go see they mom or they girl." Further, the jury heard testimony from Aaron Grimes which established that, on the day after Thomas was shot, [Appellant] told Grimes that he and another guy went down there and caught him and we just started letting him have it. Although Neal Kitchen, Raheem Hargust, Nelson Jones, and Aaron Grimes disavowed many of the averments made in their respective statements to police, the signed statements were properly admitted as evidence at trial through the testimony of Detectives Singleton and Williams. The statements were admissible for their truth as prior inconsistent statements that were signed and adopted by the declarants.

---

[1] Jabar Thomas was shot and killed on August 4, 2009.

The jury also heard testimony from numerous members of the Philadelphia Police Department. Officers Dobbins, Lai, and Dyrda testified that, on the night Thomas was killed, they responded to a radio call for gunshots on the 1400 block of South Hicks Street. Upon arrival, they observed Thomas slumped over the console of his vehicle with a gunshot wound to the back of his head and immediately transported him to Jefferson Hospital. Officers Fox and Welsh provided testimony regarding the ballistic evidence, specifically that nine (9) nine millimeter fired cartridge casings, two (2) projectiles, and one (1) fragment were recovered from the scene. Officer Welsh concluded that all nine fired cartridge casings were fired from the same firearm, but could not determine exactly how many firearms were fired when Thomas was killed. Detectives Williams, Singleton and Byard all testified regarding the details of the investigation, providing the jury with information about the various persons interviewed and the statements and identifications given to police. Finally, Dr. Collins testimony established that the decedent's death was a homicide caused by a fatal gunshot wound to the back of the head.

Trial Court Opinion, 3/18/14, at 5-8.

Appellant was charged with murder of the first degree,[2] conspiracy,[3] two firearms offenses,[4] and possession of an instrument of crime.[5] Appellant was tried jointly with Steven Mapp at a jury trial that began on January 11, 2013. The jury found Appellant guilty of all the aforementioned offenses on January 22, 2013.[6] On March 18, 2013, the trial court sentenced Appellant to concurrent terms of life imprisonment for murder of

---

[2] 18 Pa.C.S. § 2502(a).
[3] 18 Pa.C.S. § 903.
[4] 18 Pa.C.S. §§ 6106 and 6108.
[5] 18 Pa.C.S. § 907.
[6] Co-defendant Steven Mapp was also convicted for the same offenses.

the first degree and conspiracy, and to no further penalty for the remaining offenses.

Appellant filed a timely post-sentence motion and a timely supplemental post-sentence motion, both of which were denied by operation of law on July 17, 2013. On July 23, 2013, Appellant filed a timely notice of appeal. He filed his Pa.R.A.P. 1925(b) statement on August 14, 2013, and the trial court issued its Rule 1925(a) opinion on March 18, 2014.

Appellant now presents the following questions for our review:

A. Was the evidence insufficient as a matter of law?

B. Did the [trial] court err when it allowed the jury to review witness statements during their deliberations?

Appellant's Brief, at 5.

Having examined the certified record, the briefs of the parties, the applicable law, and the thorough opinion authored by the Honorable Linda Carpenter of the Court of Common Pleas of Philadelphia County, we conclude that Judge Carpenter's well-reasoned opinion appropriately disposes of the issues presented by Appellant on appeal.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/12/2015

- 4 -

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA     :
    :
v.     :     **CP-51-CR-0000121-2010**
    :
DEMETRIUS COX     :

FILED

MAR 18 2014

**OPINION**

CARPENTER, J.      March 18, 2014

Defendant Demetrius Cox ("Cox") and his co-defendant were charged with and found guilty of Murder of the First Degree (H1), Conspiracy to Commit Murder ("Conspiracy") (H1), Carrying Firearms Without a License ("VUFA § 6106") (F3), Carrying Firearms on Public Property in Philadelphia ("VUFA § 6108") (M1) and Possession of Instrument of Crime ("PIC") (M1) on bill of information CP-51-CR-0000121-2010.[1] These charges arose from the shooting death of Jabar Thomas on August 4, 2009 on the 1400 block of South Hicks Street in the City of Philadelphia. This court requests that the Superior Court uphold the convictions and affirm the sentence imposed in this matter.

---

[1] Co-defendant Steven Mapp was convicted on bill of information CP-51-CR-0000118-2010 and has an appeal pending in the Superior Court under docket 2402 EDA 2013.

## PROCEDURAL HISTORY

On January 9, 2013 and January 10, 2013, this court conducted voir dire. On January 10, 2013, following the selection of all jurors, this court heard the Commonwealth's Motion in Limine to Admit Other Crimes Evidence, which this court granted in part and denied in part. On January 11, 2013, Cox elected to exercise his right to a jury trial and pled not guilty to the above listed charges. That same day, this court heard and denied Cox's Motion for a Mistrial. On January 22, 2013, the jury found Cox guilty of Murder of the First Degree (H1), Conspiracy (H1), VUFA § 6106 (F3), VUFA § 6108 (M1) and PIC (M1). At the conclusion of the trial, sentencing was deferred to March 8, 2013. On March 8, 2013, this court sentenced Cox to Life imprisonment without parole on the homicide and conspiracy charges, to run concurrently. He received no further penalty on the remaining charges. On March 18, 2013, Cox filed a Post-Sentence Motion and on June 6, 2013 he filed a Supplemental Post-Sentence Motion, both of which were denied by operation of law on July 17, 2013.

On July 23, 2013, this court received a Notice of Appeal and on August 5, 2013, upon completion of the notes of testimony, Cox was served an Order directing him to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 14, 2013, this court received Cox's 1925(b) response which raised the following issues on appeal:

A. THE EVIDENCE WAS INSUFFICENT AS A MATTER OF LAW
   i. The evidence was insufficient as a matter of law because the evidence presented by the Commonwealth consisted almost exclusively of the prior inconsistent statements of its witnesses. Convictions rendered by a jury after the consideration of only this form of evidence are not deemed constitutional unless: 1) the

2

statements establish every element of the offenses charged beyond a reasonable doubt; and 2) the jury could reasonably rely on the statements to render its verdict. *Commonwealth v. Brown,* 52 A. 3d 1139 ( 2012) . The statements used against Mr. Cox did not contain the requisite evidence to enable the jury to find all of the elements of the crimes charged proven beyond a reasonable doubt. The evidence was therefore insufficient to sustain Mr. Cox's convictions. *Commonwealth v. Jones,* 668 A.2d 491 (1995).

ii. The evidence was also insufficient as a matter of law to show Mr. Cox was guilty of the crimes charged since the contradictory testimony of each of the Commonwealth's witnesses rendered their global testimony not worthy of belief. As such, it is impossible to draw reasonable inferences of guilt beyond a reasonable doubt as to each element of the offenses charged.

B. DEFENDANT WAS DENIED A FAIR TRIAL AND THE COURT ERRED IN ALLOWING THE JURY TO REVIEW THE WITNESS STATEMENTS OF AARON GRIMES AND NELSON JONES DURING THEIR DELIBERATIONS

i. The court violated Pa.R.Crim.P 646 and abused its discretion when it allowed the jury to review during their deliberations the witness statements of Aaron Grimes because the statements contained a purported confession by Mr. Cox to Mr. Grimes. At trial, Mr. Grimes testified that he was coerced by the police into manufacturing the confession and denied that Mr. Cox ever admitted to committing a crime. Pa.R.Crim.P 646(C) (2) expressly prohibits a jury from reviewing **"any written or otherwise recorded confession by the defendant."** (Emphasis supplied). A violation of this proscription is intrinsically prejudicial and mandates a new trial. *Commonwealth v. Williams,* 959 A.2d 1272 (2008).

ii. The court also violated Pa. R. Crim Pro. 646 and abused its discretion by allowing the jury to review during its deliberations the witness statement of Nelson Jones. The statement contained a supposed eyewitness account by Mr. Jones of Mr. Cox killing Jabar Thomas. It also contained a description of an alleged conversation between Mr. Cox and Mr. Jones in which Mr. Cox inquired about certain methods of killing people. Mr. Jones recanted while testifying at trial the portions of his statement that implicated Mr. Cox. By allowing the jury to review only the written statement of Mr. Jones while deliberating, the court allowed the jury to place undue emphasis and credibility on the statement. The court's action also served to discredit the trial testimony of Mr. Jones which supporting Mr. Cox's claims of innocence. This resulted in prejudicial error. *Commonwealth v. Barnett,* 50 A.3d 176 (2012).

3

## FACTS

On August 4, 2009, at approximately 11:00 p.m., Jabar Thomas ("Thomas") got out of a van that was parked on the corner of Reed Street and South Hicks Street and entered his mother's home at 1413 South Hicks Street in the City of Philadelphia. Thomas promptly exited his mother's home and got into his Nissan Maxima that was parked in front of the home. Moments later, co-defendants Demetrius Cox ("Cox") (a.k.a."Meat") Steven Mapp ("Mapp") (a.k.a. "Chunky") fired approximately nine (9) gunshots at Thomas, shooting out the windshield of the vehicle in the process. Cox and Mapp then ran toward Dickinson Street before cutting through an alley between South Hicks and 15th Street.

Thomas was found slumped over the center console of his vehicle with a large wound to the back of his head. Thomas was put in the back of a police vehicle and taken to Thomas Jefferson University Hospital. On August 7 at 1:15 p.m. Thomas was pronounced dead from multiple gunshot wounds, the fatal wound being the one to the back of his head.

## DISCUSSION

### Sufficiency of the evidence

On appeal, Cox claims that the evidence was insufficient to support the jury's finding of guilt, asserting that the testimony of Commonwealth witnesses was contradictory and consisted "almost exclusively of prior inconsistent statements."[2] This court disagrees. The standard applied when reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the

---

[2] Appellant's 1925(b) statement Issue A(i).

4

verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.[3] In applying this test, the Superior Court may not weigh the evidence and substitute its judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless, the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstance.[4] The Commonwealth may satisfy its burden of proving an element of the crime beyond a reasonable doubt through the use of wholly circumstantial evidence. In applying the test, the whole record must be evaluated and all evidence received must be considered.[5] Additionally, any challenge to the sufficiency of the evidence must specify the element or elements upon which the evidence was insufficient; otherwise the claim is waived.[6]

The evidence introduced at trial was more than sufficient to support the jury's verdict and although some of the Commonwealth's civilian witnesses recanted their prior statements to police, the collective evidence presented through all witnesses and exhibits supported the requisite elements of the crimes charged. At trial, the jury heard testimony from numerous civilian witnesses, police officers, detectives, as well as the medical examiner, Dr. Collins. Multiple witnesses testified that Mapp and Cox were part of a group of young men who had an ongoing rivalry over the sale of drugs with another neighborhood group with which Jabar Thomas was associated. The rivalry resulted in a

---

[3] *Com. v. Heberling*, 678 A.2d 794, 795 (Pa. Super. 1996) (citing *Com. v. Williams*, 650 A.2d 420 (Pa. 1994)).
[4] *Com. v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995).
[5] *Com. v. Valette*, 613 A.2d 548, 549 (Pa. 1992).
[6] *Com. v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008).

5

number of homicides, including the instant murder of Jabar Thomas. The testimony of Neal Kitchen established that, shortly before Thomas was killed, Cox and Mapp were walking up the 1500 block of Dickinson Street and Mapp was telling people to "watch the corner."[7] The testimony of Tangia Hargust, and Raheem Hargust corroborated that of Neal Kitchen, affirming Mapp's instruction to "watch the corners,"[8] and further established that Cox was telling people to go inside the house.[9] The testimony of these three witnesses also established that one to two minutes after Cox and Mapp passed the 1500 block of Dickinson Street, numerous gunshots were fired and Cox and Mapp were subsequently seen running back toward Dickinson Street before cutting through an alley between South Hicks and 15th Street. As they were running by, the back of a gun was visibly protruding from Cox's waistband.[10] Cox and Mapp were known to carry guns and had been saying that all of the guys from the block of South Hicks Street and Reed Street were "going to get theirs."[11] In addition, the jury heard testimony from Nelson Jones which established that Thomas had gone into his mother's home on South Hicks Street, exited the home shortly thereafter, and was shot in his car moments later. Mr. Jones' testimony corroborated the identification of Cox and Mapp as the shooters and identified both Cox and Mapp as carrying guns. Additionally, he saw Cox and Mapp cut through an alley and run away from the crime scene.[12] Mr. Jones' testimony also established that a few days prior to Thomas' murder, Cox had asked Mr. Jones how he would "get a person"[13] to which Jones responded that "everybody got to

---

[7] N.T. 1/11/2013 at 131:3-7.
[8] N.T. 1/11/2013 at 263-64.;
[9] N.T. 1/11/2013 at 214:13-25.
[10] N.T. 1/11/2013 at 265:3-10; 270:3-23.
[11] N.T. 1/11/2013 at 260-70.
[12] N.T. 1/14/2013 at 245-248.
[13] N.T. 1/14/2013 at 251:9-10.

6

go see they mom or they girl."[14] Further, the jury heard testimony from Aaron Grimes which established that, on the day after Thomas was shot, Cox told Grimes that he "and another guy went down there and caught him and we just started letting him have it."[15] Although Neal Kitchen, Raheem Hargust, Nelson Jones, and Aaron Grimes disavowed many of the averments made in their respective statements to police, the signed statements were properly admitted as evidence at trial through the testimony of Detectives Singleton and Williams. The statements were admissible for their truth as prior inconsistent statements that were signed and adopted by the declarants.[16]

The jury also heard testimony from numerous members of the Philadelphia Police Department. Officers Dobbins, Lai, and Dyrda testified that, on the night Thomas was killed, they responded to a radio call for gunshots on the 1400 block of South Hicks Street. Upon arrival, they observed Thomas slumped over the console of his vehicle with a gunshot wound to the back of his head and immediately transported him to Jefferson Hospital. Officers Fox and Welsh provided testimony regarding the ballistic evidence, specifically that nine (9) nine millimeter fired cartridge casings, two (2) projectiles, and one (1) fragment were recovered from the scene. Officer Welsh concluded that all nine fired cartridge casings were fired from the same firearm, but could not determine exactly how many firearms were fired when Thomas was killed.[17] Detectives Williams, Singleton and Byard all testified regarding the details of the investigation, providing the jury with information about the various persons interviewed and the statements and identifications given to police. Finally, Dr. Collins' testimony

---

[14] N.T. 1/14/2013 at 251:10-12.
[15] N.T. 1/14/2013 at16-20.
[16] See Pa.R.E. 803.1(1)(b).
[17] N.T. 1/16/2013 at 57-63.

7

established that the decedent's death was a homicide caused by a fatal gunshot wound to the back of the head. This court, in viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, has determined that the evidence was sufficient to enable the jury to find, beyond a reasonable doubt, that Cox was guilty of Murder of the First Degree (H1), Conspiracy (H1), VUFA § 6106 (F3), VUFA § 6108 (M1) and PIC (M1).

### Witness statements

Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge and the trial court's ruling will not be reversed absent an abuse of discretion.[18] Pa.R.Crim.P. 646 sets forth that a judge may permit a jury to have exhibits deemed to be proper in their possession during deliberations, noting a few specific exceptions. In relevant portion, Pa.R.Crim.P. 646 provides:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> (C) During deliberations, the jury shall not be permitted to have:
> (1) a transcript of any trial testimony;
> (2) a copy of any written or otherwise recorded confession by the defendant;
> (3) a copy of the information or indictment; and
> (4) except as provided in paragraph (B), written jury instructions.[19]

As further established by our Superior Court, a prosecution witness's statement entered into trial evidence as an exhibit may be sent out to the jury.[20]

---

[18] *Com. v. Merbah*, 411 A.2d 244, 247 (Pa. Super. 1979).
[19] Pa.R.Crim.P. 646.
[20] *Com. v. Causey*, 833 A.2d 165, 178 (Pa. Super. 2003).

8

On appeal, Cox asserts that this court abused its discretion in permitting the police interview statements of Nelson Jones and Aaron Grimes to be sent back to the jury during deliberations. With regard to the statement of Nelson Jones, Cox argues that sending the statement back to the jury allowed the jury to place undue emphasis on the statement and served to discredit Mr. Jones' trial testimony. With regard to the statement of Aaron Grimes, Cox claims that the statement contained a purported confession that Grimes was coerced into manufacturing by police. For the reasons set forth below, this court disagrees, finding that the statements were properly sent back to the jury during deliberations.

Initially, this court notes the sequence of the questions from the jury, attached as Exhibit A, illustrating the jury's repeated desire to have the statements during deliberations. The jury questions clearly show that the jury first asked for the *statements* of Nelson Jones and Aaron Grimes and were initially told that they would have to rely on their recollection. After further deliberations, the jury then requested the *court transcripts* of Nelson Jones and Aaron Grimes and were instructed that the court could not provide them with the written transcripts, but could have the testimony read back, acknowledging that lengthy preparation would be required. The jury indicated that they were interested in hearing the testimony, but two hours later, sent a second request for the *statements* of Nelson Jones and Aaron Grimes. This court then inquired if the statements were requested instead of or in addition to the rereading of the testimony and the jury indicated that they preferred to have the statements *instead of* the testimony. In consideration of these multiple, specific requests for witness statements over the course of two days of deliberation, this court properly permitted the

9

statements of Nelson Jones and Aaron Grimes to go back to the jury with the necessary redactions, pursuant to this court's evidentiary rulings throughout the trial.

With regard to Cox's claim that Grimes' statement contained a purported confession, this court does not agree because the statement was signed and adopted by the witness, Aaron Grimes, not the defendant. Grimes testified at trial, where he was subject to cross-examination, and the jury was able to assess his credibility as a witness. The statement was admitted as a prior inconsistent statement, in response to Grimes' testimony at trial recanting his earlier statement to police. Moreover, Cox did not object to the purported confession at the time it was read at trial, neither through the testimony of Aaron Grimes nor through the testimony of Detective Singleton, nor did he object to the statement going back to the jury on account of its purported confession. As such, the statement was properly admitted at trial and was sent to the jury during deliberations within the discretion of this court.

Under the circumstances of this case, even if it was error for this court to send the statements back to the jury during deliberations, the error was harmless in light of all of the other evidence presented at trial. Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge and the trial court's ruling will not be reversed absent an abuse of discretion.[21] Even if the trial court's allowance of an exhibit to go back to the jury is found to be erroneous, a new trial is warranted **only if** the defendant demonstrates that the act was prejudicial and not merely a harmless error.[22] According to the Pennsylvania Supreme Court, error is considered to be harmless where:

---

[21] *Com. v. Merbah*, 411 A.2d 244, 247 (Pa. Super. 1979).
[22] *Com. v. Hawkins*, 701 A.2d 492, 507 (Pa. 1997).

10

1) the error did not prejudice the defendant or the prejudice was de minimis; or 2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or 3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.[23]

The Court further stated that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless" and the Commonwealth bears this burden.[24] In consideration of the overwhelming evidence of guilt, as presented through the testimony of numerous police officers, detectives, the medical examiner, as well as many other civilian witnesses, as discussed at length with regard to the sufficiency of the evidence, this court finds the error to be harmless.

## CONCLUSION

For the reasons set forth in this Opinion, the Superior Court should affirm the jury's finding of guilt, and the sentence imposed in this matter.

Carpenter, J.

---

[23] Com. v. Williams, 573 A.2d 536, 538-39 (Pa. 1990); Com. v. Story, 383 A.2d 155, 164-66 (Pa. 1978).
[24] Williams, 573 A.2d at 538; Story, 383 A.2d at 162 n.11.

11